The STATE of Ohio, Appellee,

v.

RICHARDSON, Appellant.

[Cite as *State v. Richardson* (1994), 94 Ohio App.3d 501.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930219.

Decided April 20, 1994.

502

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Stephen J. Wenke, Assistant Prosecuting Attorney, for appellee.

Timothy A. Smith, for appellant.

GORMAN, Judge.

## I. FACTS AND PROCEEDINGS

The defendant-appellant, Tavis Richardson, appeals from his conviction for drug abuse (R.C. 2925.11) following a no-contest plea.[1] In his two assignments of error, which challenge the trial court's order overruling his motion to suppress, Richardson contends that: (1) his stop for a minor traffic offense was a pretext to search for drugs, and (2) the trial court's order to exclude the testimony of certain witnesses precluded his ability to challenge the race-based drug profile allegedly used by the arresting officer. Neither assignment of error is well taken.

About 2:15 a.m., on March 27, 1992, Richardson was driving south on North Wayne Avenue in Lockland, Ohio. Officer Mark Reiber was three to four hundred yards away approaching from the opposite direction in a police cruiser. Because Richardson did not make a left-turn signal, the officer activated the

---

1. The court has *sua sponte* removed this cause from the accelerated calendar and placed it on the court's regular calendar.

cruiser's flashing lights and followed Richardson's automobile for three blocks. He testified that, in that distance, he saw Richardson make another left turn without signalling and run a stop sign. Richardson eventually stopped his automobile in the adjacent city of Lincoln Heights. When Richardson presented his license, Officer Reiber said that he recognized Richardson's name as having been given to him a week earlier by an informant in connection with the use and sale of crack cocaine. He further testified that he knew Richardson's brother carried a firearm and had been arrested for drug trafficking. In addition, he recalled that, a year earlier, a man was shot and killed in the Lockland apartment of Richardson's father. Accordingly, the officer ordered Richardson to exit the automobile. He told the trial judge that, as he patted Richardson down, he saw a roll of bills and a plastic baggie protruding from the pocket of Richardson's jacket. Believing that the plastic baggie contained crack cocaine, he confiscated it and placed Richardson under arrest.

## II.  STOP AND PROTECTIVE SEARCH

In his first assignment of error, Richardson contends that there were no reasonable grounds to stop him for a traffic offense, and that the stop was merely a pretext to search for drugs. To respond to these claims, we must address several issues, the first of which concerns the appropriate standard to be applied when judging the constitutional validity of the decision to stop Richardson on the strength of the observations made by Officer Reiber.

### A.  STOP

There are several recognized constitutional justifications for stopping a motor vehicle, including the following: (1) to make a full custodial arrest of an occupant based on probable cause, and (2) to effect a more limited and less intrusive investigative detention based upon a less stringent standard of reasonable suspicion. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; United States v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. Where, as here, the stop is prompted by a minor traffic violation such as the failure to make a left-turn signal under R.C. 4511.39, state law may allow only for the issuance of a citation and thereby effectively prevent, without more, a full-blown custodial arrest. R.C. 4511.99(D) (failure to signal, a minor misdemeanor for first offense); R.C. 2935.26(A) (citation required for minor misdemeanor unless enumerated exception applies); see, also, State v. Slatter (1981), 66 Ohio St.2d 452, 20 O.O.3d 383, 423 N.E.2d 100. In such a case, if the initial detention is, on the facts, limited in nature, falling short of an arrest, it is clear that the threshold standard of constitutional compliance need be no greater

than reasonable suspicion, even though the police might otherwise possess what amounts to probable cause to believe that an offense has been committed.

Richardson first argues that Officer Reiber lacked a sufficient articulable ground to provide even reasonable suspicion for a traffic stop, because the conduct observed by the officer on the night in question did not amount to a left-turn-signal violation under R.C. 4511.39. The premise for this argument is that the statute does not require the use of a signal whenever a motorist using due care can, under the attendant circumstances, make the turn with reasonable safety. Such circumstances prevailed in this case, Richardson reasons, because the uncontroverted evidence adduced at the suppression hearing showed that his initial left turn posed absolutely no danger either to Officer Reiber or to any other traffic in the vicinity.

R.C. 4511.39 states that no person shall turn left "unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." As it appears in the statute, the key term "nor" is disjunctive. See Webster's Third New International Dictionary (1981) 1539. In its context, it is used to separate elements of conduct (due care, use of turn signal) that are phrased as negative prohibitions rather than affirmative methods of compliance. For this reason, it is clear that the statute requires a motorist both to use reasonable care and to signal when making a left turn, and that the failure to do either gives rise to a traffic violation. Other appellate districts have similarly interpreted R.C. 4511.39. *State v. Wallis* (Feb. 2, 1993), Gallia App. No. 92CA16, unreported, 1993 WL 33321; *State v. Lowman* (1992), 82 Ohio App.3d 831, 613 N.E.2d 692.

According to the record in this case, Officer Reiber personally observed Richardson as he made the initial left turn without using the signal required by R.C. 4511.39. Moreover, before the stop actually occurred, according to Reiber's testimony, the officer further observed a second unsignalled turn and a failure to observe a stop sign. In light of these observations of the actual commission of traffic offenses, the officer had more than enough to satisfy the threshold standard of reasonable suspicion to justify the stop. See *State v. Evans* (1993), 67 Ohio St.3d 405, 407, 618 N.E.2d 162, 165, certiorari denied (1994), 510 U.S. ——, 114 S.Ct. 1195, 127 L.Ed.2d 544 (propriety of traffic stop "cannot be reasonably disputed" when officer observed burned-out headlight).

## B. PRETEXT

This brings us to the second part of Richardson's argument: that even if there was an articulable ground for the stop under the threshold standard of reasonable

suspicion, that ground was not alone determinative of the constitutional validity of the detention, because Officer Reiber was using the traffic violation merely as a pretext for an otherwise unjustifiable search for drugs. Richardson asks us to adopt a heightened standard of constitutional scrutiny for conduct that, although legitimate for one reason, is used in an attempt to justify more intrusive investigation for a reason that cannot independently be said to meet a threshold standard of constitutional compliance.

■ Pretextual stops are a significant intrusion into one's liberty and have been held to be unconstitutional. *United States v. Lefkowitz* (1932), 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877. A stop is pretextual if police use a legal justification for making the stop to search for evidence of unrelated crimes without probable cause or reasonable suspicion. See Katz, Ohio Arrest, Search and Seizure (3 Ed.1992) 174, Section T11.04(D). The *Lefkowitz* decision, however, gives no meaningful guidance for how to determine when a given stop is pretextual. In general, it may be said that the existence of a Fourth and Fourteenth Amendment violation does not depend on a police officer's subjective motives, but on "an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States* (1978), 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177–178. In rejecting the constitutional significance of subjective motives with regard to the plain view doctrine, the United States Supreme Court has similarly concluded that "evenhanded law enforcement is best achieved by the application of objective standards of conduct." *Horton v. California* (1990), 496 U.S. 128, 139, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 124–125.

If an objective test for pretext is restricted to precisely the same test held to govern investigatory stops or arrests in general, pretext is deprived of any constitutional significance whenever a stop or an arrest meets the ordinarily accepted standard, no matter how egregious or illegal an officer's actions may be when viewed from the perspective of the actual goal of the investigation. See Katz, *supra*, at 176. In *United States v. Ferguson* (C.A.6, 1993), 8 F.3d 385, 390–391, the Sixth Circuit Court of Appeals adopted a general test of objectivity based upon *Scott*, *supra*, rejecting both a "could test" (could an officer lawfully have made the stop?) and a "would test" (would an officer lawfully have chosen to make the stop?). It concluded that "[t]he stop is reasonable if there was probable [or reasonable] cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Id.* at 391. In our judgment, granting such broad latitude to the police in all minor traffic cases, including those that qualify factually as pretexts, is at odds with a foundational purpose of the exclusionary rule, which is to deter police misconduct.

We believe that true pretextual arrests or stops arise from extraordinary circumstances and are therefore better evaluated under a more exacting standard of objectivity, such as the test adopted by the Eleventh District Court of Appeals in *State v. Whitsell* (1990), 69 Ohio App.3d 512, 523, 591 N.E.2d 265, 272. The *Whitsell* court applied a "would test," which falls somewhere between an ordinary objective test such as reasonable suspicion and a subjective test focused upon a police officer's motive. This test holds that a pretextual stop depends upon whether a reasonable police officer, confronted with ordinary reasonable suspicion, would have chosen under the circumstances to proceed with making a detention in the absence of an improper motive. See, also, *State v. Spencer* (1991), 75 Ohio App.3d 581, 600 N.E.2d 335 (pretext to search passenger where car stopped for left turn without signal). The heightened but still objective "would test" focuses upon such things as deviations from either an officer's accepted routine or valid police department practice in the assessment of whether a stop or an arrest is illegitimately pretextual. *Whitsell,* 69 Ohio App.3d at 523–524, 591 N.E.2d at 272–273. It is consistent with the ordinary "reasonable person" standard of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in which a neutral and detached judge examines the constitutional justification for an intrusion in light of the specific surrounding circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, certiorari denied (1991), 501 U.S. ——, 111 S.Ct. 2833, 115 L.Ed.2d 1002. Professor Katz observes that the test maintains a proper balance between judicial scrutiny of stops for police misconduct and removing a windfall to wrongdoers where improper motives play no material part. Katz, *supra,* at 177.

Admittedly, a heightened objective test for pretextual stops may have limited practical significance by serving to invalidate police action under only the most extraordinary circumstances. For example, it is unlikely that an officer will ever admit taking action beyond the terms of accepted routine or departmental policy in stopping an automobile for a traffic violation. As unlikely as it may be that pretextual conduct may be found, however, in those extraordinary instances where it can be shown to exist, we believe a more exacting Fourth Amendment avenue of review should be available for searches stemming materially from improper hunches grounded in such things as race, dress, appearance, or personal bias.

■ We are not persuaded, however, from our review of the record, that there is in the present case a sufficient factual basis for the application of a heightened objective test for pretext. Although Richardson asserts that the initial stop was made only so that Officer Reiber could undertake a search for drugs, the record is bare of any evidence that could reasonably substantiate this position. There is no evidence, for example, that the officer was conducting a *drug investigation,*

that he was looking for drug offenders, or that he was concerned specifically in any way about drugs when he decided to stop Richardson's vehicle upon observing the first traffic offense. What the evidence does show is that the officer personally observed one criminal violation, and that, prior to the actual stop, he observed the commission of two more, by someone whose identity, history, and personal characteristics were entirely unknown to him. On the state of this record, the only conceivable link between the stop and drugs is the fact that drugs were ultimately discovered in the course of the investigative activity that followed the stop. In our judgment, such a discovery made during an ensuing search, standing alone, is insufficient to demonstrate that the stop itself was pretextual. There being no factual basis to support the claim of pretext, the appropriate standard for measuring the validity of the stop is clearly one of unadorned reasonable suspicion; and, as we have already determined, the evidence here is more than ample to satisfy that test.

## C. EQUAL PROTECTION

Enlarging his constitutional argument beyond his claim of pretext, Richardson also contends that his stop for a minor traffic violation was based on Officer Reiber's use of a race-based drug-courier profile. He relies on dictum in *United States v. Jennings* (C.A.6, Jan. 13, 1993), No. 91–5942, unreported, suggesting that use by police of racial criteria for arrest or detention is subject to the exclusionary rule. *Jennings* involved a consensual encounter between the police and a suspect in an airport. The Sixth Circuit gleaned from the Equal Protection Clause a substantively based Fourteenth Amendment right that bars stops and searches by police because of discriminatory motives. The majority held that if there is an inference of an invidiously discriminatory motive by police, the burden then shifts to the government to rebut the inference by demonstrating a nonracial reason for initiating the encounter.

Consistent with *Jennings,* Richardson relied below on statistics, which he compiled for a six-month period, purporting to show that Officer Reiber singled out minorities for different treatment than non-minorities. Based upon the six-month period, Officer Reiber issued sixty-six percent of his citations to African Americans, although Lockland's overall population is only twenty-five-percent African American. The prosecutor argues that, standing alone, these statistics are not evidence of disparate treatment and are meaningless because the population of the area where the officer was patrolling and where Richardson was stopped is eighty percent or more African American.

The merits of Richardson's factual argument are immaterial to the constitutional issue he raises. Although the Equal Protection Clause expresses a guarantee of equal treatment, we are not aware of any constitutional requirement which

allows police to stop suspects only in proportion to the racial make-up of the surrounding community. The exclusionary rule is a judicially created remedy to protect Fourth Amendment rights. *United States v. Calandra* (1974), 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561. Although a pretextual arrest in which race is a factor may invoke the exclusionary rule by means of the Fourth Amendment, we have not found another case comparable to *Jennings* which recognizes that a substantively based Fourteenth Amendment right through the Equal Protection Clause invokes the exclusionary rule. The Sixth Circuit implicitly rejected *Jennings* in *United States v. Ferguson, supra,* holding that a lawful traffic stop is objectively reasonable, and that the police officer's motive is irrelevant. In *United States v. Harvey* (C.A.6, 1994), 16 F.3d 109 (Keith, J., dissenting), where a lawful traffic stop was also prompted by the arresting officer's use of a drug-courier profile based on race, the Sixth Circuit held that motive was irrelevant.

When an appellate court reviews a ruling on a motion to suppress, the weight of the evidence and the credibility of the witnesses are for the trier of fact. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241. Here, the trial court specifically found that it was reasonable for Officer Reiber to stop Richardson for a left-turn-signal violation. Neither was race a factor if the trial judge believed Officer Reiber. The officer testified that he was unaware of Richardson's race until after he stopped his automobile. Because reasonable suspicion is a fact-dependent inquiry, the trial court was entitled to find that the traffic stop was reasonable.

## D. PAT–DOWN SEARCH

Having determined that the traffic stop was reasonable, we must next address the question whether Officer Reiber's protective search of Richardson was valid. An officer's request that the driver exit an automobile following a stop for a minor traffic violation is deemed only a minimal intrusion justified in the interest of reducing "the likelihood that the officer will be the victim of an assault." *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336–337. However, the officer must possess "reasonable articulable suspicion" that the suspect is armed and dangerous to authorize a pat-down of the suspect's outer clothing, and the officer cannot, under these circumstances, conduct a full body search. *Terry, supra,* 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908–910; *United States v. Place* (1983), 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120. If weapons or contraband are discovered during a valid *Terry* protective search, the stop may escalate to a custodial arrest. *Id.* at 706, 103 S.Ct. at 2644, 77 L.Ed. at 120; *Minnesota v. Dickerson* (1993), 508 U.S. ——, ——, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 345–346.

■ Officer Reiber's testimony about his belief that Richardson might be armed and dangerous was sufficient for the trial court to find that the officer independently articulated particularized facts and circumstances which would have warranted an officer of reasonable caution to pat down Richardson's outer clothing to determine if he was armed. *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 905–906; *Delaware v. Prouse, supra; State v. Andrews, supra.* Finding the pat-down justified, the trial court properly determined that the officer could have lawfully taken control of any weapon or contraband that was in plain view or that by feel was immediately apparent to be contraband. See *Minnesota v. Dickerson, supra.* Therefore, Richardson's first assignment of error is overruled.

## III. EXCLUSION OF EVIDENCE

In his second assignment of error Richardson challenges the trial court's exclusion of testimony by witnesses concerning their personal experiences with Officer Reiber. He contends that this evidence was relevant to show the officer's alleged "pattern of illegal conduct" and "illicit motivation." Following the trial court's ruling, he proffered into the record the names of eighteen drivers and four passengers, most of whom were African Americans, and a summary of their expected testimony. Because of our rejection of Richardson's equal protection argument in the first assignment of error, his second assignment of error is moot as provided in App.R. 12(A)(1)(c), but we elect to address this assignment briefly.

Evidence is admissible under Evid.R. 406, as Richardson argues, to prove that a person's conduct on a particular occasion was in conformity with his habit or routine practice. 1 Weissenberger's Ohio Evidence (1988), Sections 406.1–406.4. The trial court may also exclude relevant evidence if it determines that the evidence is needlessly cumulative. Evid.R. 403(B). Weissenberger, *supra,* at Section 403(7). Because the trial court has broad discretion in admitting or excluding evidence, the Ohio Supreme Court has admonished appellate courts not to interfere unless the trial court clearly abused its discretion. *State v. Apano-vitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394, 401.

■ The anecdotal evidence proffered into the record by Richardson appears to serve as nothing more than piling on. Richardson has failed to demonstrate how he was prejudiced because the probative value of this evidence, if any, duplicates Richardson's statistical evidence offered in support of his nonexistent equal protection theory. The trial court's exclusion of this evidence as cumulative was not unreasonable, arbitrary, or unconscionable, and, therefore, was not an

abuse of discretion. *State v. Lundy* (1987), 41 Ohio App.3d 163, 168–170, 535 N.E.2d 664, 671–672. The second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and DOAN, J., concur.