[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 3.]

CITY OF DAYTON, APPELLANT, *v*. ERICKSON, APPELLEE.

[Cite as *Dayton v. Erickson*, 1996-Ohio-431.]

*Criminal law—Where police officer stops vehicle based on probable cause that traffic violation has occurred, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop.*

———————————

Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (*United States v. Ferguson* [C.A.6, 1993], 8 F.3d 385, applied and followed.)

———————————

(No. 95-859—Submitted April 16, 1996—Decided July 3, 1996.)

APPEAL from the Court of Appeals for Montgomery County, No. 14712.

———————————

{¶ 1} On May 13, 1994, Dayton Police Officer David Klosterman was on routine patrol in a marked police cruiser when a noisy black Oldsmobile drove past him on Pierce Avenue. Klosterman ran a check on the license plate number of the vehicle using a computer terminal in his police cruiser. The computer check revealed that the registered owner of the vehicle did not have a valid driver's license. Klosterman decided to stop the Oldsmobile but, by the time he caught up with it, the vehicle was parked and unoccupied. Therefore, Klosterman continued on his routine patrol.

{¶ 2} Between fifteen and thirty minutes later, the same black Oldsmobile drove past Klosterman on another city street.  Klosterman pulled in behind the Oldsmobile and followed it for a short distance (one or two blocks) until the driver of the vehicle failed to signal a turn.  Klosterman stopped the Oldsmobile in connection with this minor traffic offense. Cindy Erickson, appellee, was the driver of the vehicle.  During the stop, Klosterman learned that appellee's driving privileges had been suspended.  Accordingly, Klosterman cited appellee for failure to signal a turn, driving without a valid operator's license, and driving under suspension.

{¶ 3} Thereafter, appellee filed, in the Dayton Municipal Court, a motion to suppress the evidence obtained during the traffic stop.  Appellee claimed that Klosterman had stopped her for the turn signal violation as a pretext to investigate whether she had been driving without a valid operator's license.  In this regard, appellee urged that the traffic stop had violated the Fourth Amendment prohibition against unreasonable searches and seizures, and that any evidence obtained as a result of the stop was subject to exclusion.  At a hearing on the motion, Klosterman testified that the primary reason he had stopped appellee was because of the turn signal violation.  Klosterman estimated that he normally stops between one and three drivers per week for failure to signal a turn.  Additionally, Klosterman maintained that he would have stopped appellee for the turn signal violation irrespective of his earlier encounter with appellee's vehicle on Pierce Avenue.  Following the hearing, the Dayton Municipal Court granted appellee's motion to suppress, holding that:

"The proper inquiry in this case is 'not whether the officer COULD validly have made the stop, but whether under the same circumstances a reasonable officer WOULD have made the stop in the absence of the invalid purpose'. *United States v. Smith*, 799 F.2d 704 (11th Cir. 1986).  Whether a Fourth Amendment violation

occurs depends upon an objective assessment of the officer's actions and not upon his actual state of mind.

"Based upon the testimony of the officer, the traffic stop could have been validly made. However, because an officer theoretically could have validly stopped the car for a right turn signal violation is not determinative. Similarly immaterial is the actual subjective intent of the officer. His actions and description of the circumstances surrounding the stop are however relevant to [the] inquiry.

"By looking at the facts and using an objective standard, it is unbelievable that a reasonable officer would stop a vehicle for a right turn violation absent any invalid purpose.

"The Court finds that the officer merely stopped the vehicle for a right turn signal violation as a subterfuge to question the driver concerning a greater offense of the law. The traffic stop was pre-textual and thus, unreasonable and any evidence obtained from it must be excluded."

{¶ 4} The city of Dayton, appellant, appealed from the trial court's decision granting the motion to suppress.[1] On appeal, the court of appeals, by a two-to-one vote, affirmed the judgment of the trial court, holding that:

"To find that a stop was a pretext, the trial court must make two findings. First, it must find that the police officer did not have a reasonable, articulable suspicion to stop the defendant for the more serious offense. Second, the trial court must find that a reasonable police officer would not have stopped the defendant for the minor offense absent the invalid purpose. * * *

---

1. In conformance with Crim.R. 12(J), the prosecutor filed a timely notice of appeal from the trial court's decision granting the motion to suppress and certified that (1) the appeal was not taken for the purpose of delay, and (2) that the trial court's decision granting the motion had rendered the city of Dayton's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution had been destroyed.

"In the first step of the trial court's two-part analysis, it found that Officer Klosterman did not have probable cause to stop Erickson for the more serious offense of driving without a valid operator's license. [Prior to the stop,] Officer Klosterman had information from the police computer that the registered owner of the Oldsmobile did not have a valid driver's license, but he did not know if the driver of the vehicle was the owner. * * *

"[I]n this case, the police officer had no particular reason to believe that the driver, Erickson, was the owner of the vehicle. No evidence was presented in the trial court that the police officer had a description of the vehicle's owner from the BMV, knew the owner's gender prior to the stop, or had actually observed the driver prior to the stop. Under these circumstances, the trial court could have reasonably concluded * * * that the officer did not have a reasonable and articulable suspicion that the operator was engaged in criminal activity so as to justify an investigative stop.

"Since the trial court concluded that the police officer did not have a reasonable and articulable basis to stop Erickson for driving without a license, it proceeded to the second step in the analysis: whether a reasonable officer would have stopped Erickson for the minor traffic violation [for failing to signal a turn] absent an invalid purpose. The proper test is not whether the police officer *could* have legally stopped the driver, but whether a reasonable officer *would* have done so under the circumstances. *United States v. Smith* (C.A. 11, 1986), 799 F.2d 704, 708 * * *.

"* * *

"* * * We conclude, based upon our review of the record, that the trial court could have reasonably decided that a reasonable police officer would not have stopped Erickson for the turn signal violation absent an improper purpose, and that the trial court did not abuse its discretion." (Emphasis *sic*.)

{¶ 5} Conversely, Judge Grady of the court of appeals, in a separate dissenting opinion, concluded that Klosterman had been justified in stopping the Oldsmobile for purposes of investigating whether the driver had a valid operator's license. Accordingly, in his dissent, Judge Grady found that the stop was not unlawfully pretextual.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*J. Anthony Sawyer*, Dayton Director of Law, and *John J. Scaccia*, Chief Prosecuting Attorney, for appellant.

*Lynn G. Koeller*, Montgomery County Public Defender, *Charles L. Grove* and *Anthony R. Cicero*, Assistant Public Defenders, for appellee.

_____

**DOUGLAS, J.**

{¶ 7} The court of appeals determined that a "pretextual" traffic stop is constitutionally invalid. The court of appeals defined a "pretextual stop" as one in which a police officer "uses a minor violation of the law to make a stop which the officer would not otherwise make in order to conduct a search or an interrogation for an unrelated, more serious offense for which he does not have the reasonable suspicion necessary to support a stop." The court of appeals' majority upheld the trial court's findings that the traffic stop in this case was a pretext because (1) the police officer did not have an articulable reasonable suspicion to stop appellee to investigate the more serious offenses of driving without a valid license and driving under a suspended license, and (2) a reasonable police officer would not have stopped appellee for the turn signal violation absent an invalid purpose. For the reasons that follow, we reverse the judgment of the court of appeals, vacate the judgment of the trial court, and remand this cause to the Dayton Municipal Court for further proceedings.

{¶ 8} The question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. *United States v. Ferguson* (C.A.6, 1993), 8 F.3d 385, 388. Thus, the question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind.

{¶ 9} The federal courts have generally taken two distinct approaches to the required objective assessment of an officer's actions in determining whether a traffic stop is invalid as pretextual. One of these approaches, commonly referred to as the "would" test or the "reasonable officer" standard, requires a determination whether a reasonable police officer under the same circumstances *would* have made the traffic stop in the absence of some invalid purpose. See *United States v. Smith* (C.A.11, 1986), 799 F.2d 704, 708. See, also, *Ferguson, supra,* 8 F.3d at 388 (discussing the standard for analyzing claims of allegedly pretextual traffic stops under the "would" test). The trial court and the court of appeals adopted this test in determining that Klosterman's actions in stopping appellee for a turn signal violation was a mere pretext to investigate whether appellee had a valid driver's license. The trial court held, and the court of appeals' majority agreed, that a reasonable police officer *would* not have made the stop for the turn signal violation absent some ulterior, improper motivation. Accordingly, both courts determined that the stop was pretextual and that it violated the Fourth Amendment prohibition against unreasonable searches and seizures.

{¶ 10} Conversely, the second and more prevalent approach to analyzing claims of allegedly pretextual traffic stops, commonly referred to as either the "could" test or the "authorization" standard, seeks to determine not whether a reasonable police officer *would* have stopped the defendant absent some invalid purpose, but whether an officer *could* have stopped the particular vehicle in

question for a suspected traffic violation. See *Ferguson, supra*, 8 F.3d at 388-389 (discussing the standard for analyzing claims of allegedly pretextual traffic stops under the "could" test). Federal courts adopting this approach have concluded that where an officer has either a reasonable suspicion or probable cause to stop a motorist for a traffic violation, the stop is constitutionally valid regardless of the officer's underlying intent or motivation for stopping the vehicle in question. See, *e.g.*, *United States v. Scopo* (C.A.2, 1994), 19 F.3d 777 (Traffic stop was not pretextual where officers had probable cause to stop defendant for minor traffic offenses, even though defendant was under surveillance for suspected underworld activities and the officers were members of a strike force created to monitor the defendant and others.); *United States v. Botero-Ospina* (C.A.10, 1995), 71 F.3d 783, 787, overruling *United States v. Guzman* (C.A.10, 1988), 864 F.2d 1512 ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, 'whether the stop in question is sufficiently ordinary or routine * * *.' It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle."); *United States v. Trigg* (C.A.7, 1989), 878 F.2d 1037, 1041 ("[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] an arrest is constitutional."); *United States v. Fiala* (C.A.7, 1991), 929 F.2d 285, 287-288 (same principle); *United States v. Cummins* (C.A.8, 1990), 920 F.2d 498, 500-501 (An officer who observes a traffic offense has probable cause to stop the driver of the vehicle, and an otherwise valid stop does not become unreasonable merely because the officer has "intuitive suspicions" that the occupants of the vehicle are engaged in some sort of criminal activity.); *United States v. Maejia* (C.A.8, 1991), 928 F.2d 810, 814-815 ("[A]n otherwise valid traffic stop does not become unreasonable merely because the officer knows that the car is allegedly involved in

the transportation of drugs. * * * When an officer reasonably believes that a driver is under the influence of drugs or alcohol, and supports that belief with articulable facts, it is of no consequence that the vehicle was already under surveillance for suspected drug-related crimes."); and *United States v. Bloomfield* (C.A.8, 1994), 40 F.3d 910, 915 ("Any traffic violation, however minor, provides probable cause for a traffic stop. * * * If the officer is legally authorized to stop the driver, any additional 'underlying intent or motivation' does not invalidate the stop."). See, also, *United States v. Johnson* (C.A.3, 1995), 63 F.3d 242; *United States v. Jeffus* (C.A.4, 1994), 22 F.3d 554, 557; and *United States v. Roberson* (C.A.5, 1993), 6 F.3d 1088, 1092.

{¶ 11} In *Ferguson*, *supra*, 8 F.3d 385, the United States Court of Appeals for the Sixth Circuit adopted what it considered to be a variation of the traditional "could" test for analyzing claims of allegedly pretextual traffic stops. However, the *Ferguson* test differs only minimally (if at all) from the "could" test or "authorization" standard adopted and applied by other federal circuit courts of appeals. Appellant urges us to adopt the *Ferguson* test in analyzing appellee's claim that the traffic stop in this case was unlawful as pretextual.

{¶ 12} In *Ferguson*, *supra*, 8 F.3d 385, a police officer in a marked cruiser was speaking with a security guard in a motel parking lot when the officer observed Cecil Ferguson drive into the parking lot in a Lincoln automobile. Ferguson's car was followed by a Ford automobile driven by Leonard Lester. Ferguson got out of the Lincoln and walked toward the back of the parking lot. When the police officer went to leave the parking lot, he observed Lester, who was still seated in the Ford, lie down across the front seat of the vehicle in an apparent attempt to hide. Having become suspicious of the situation, the officer parked his cruiser across the street and continued to observe the two men. Eventually, Ferguson got into the Ford with Lester, drove to a different spot in the parking lot, and went into a motel room. Ferguson left the room several minutes later and got back into the Ford with Lester.

The two men then drove to Ferguson's Lincoln, removed a briefcase from the Lincoln, and drove the Ford back to the motel room. Ferguson entered the motel room carrying the briefcase and then emerged from the room with the briefcase still in hand. The two men then drove out of the parking lot in the Ford automobile, leaving the Lincoln behind.

{¶ 13} In *Ferguson*, the police officer followed the Ford until he noticed that there was no visible license plate on the vehicle -- a violation of a city traffic ordinance. Thus, the officer stopped the Ford automobile and, among other things, questioned Lester (the driver) concerning the events at the motel. Lester was never cited for or questioned about the minor traffic offense. However, Ferguson was arrested when the officer noticed a firearm on the front seat of the vehicle. In searching the vehicle and the briefcase incident to Ferguson's arrest, police found cocaine and other evidence of drug trafficking. Accordingly, Ferguson was indicted for the federal offenses of drug trafficking and possession of a firearm during and in relation to a drug trafficking crime.

{¶ 14} Ferguson moved to suppress the evidence obtained during the traffic stop, claiming that the stop was pretextual and thus illegal. At a hearing on the motion, the police officer testified that the primary reason he had stopped the vehicle was because of Ferguson and Lester's suspicious activity at the motel. However, the officer also testified that he had stopped the vehicle for a license plate violation. Following the hearing, the federal district court denied the motion to suppress. Thereafter, Ferguson pled guilty to the drug charge while reserving his right to appeal the denial of the motion to suppress. On appeal, a panel of the United States Court of Appeals for the Sixth Circuit reversed Ferguson's conviction and vacated his sentence, finding that the traffic stop had been pretextual and, thus, unlawful. However, the Sixth Circuit vacated the panel's decision in order to address, *en banc*, the following question: "'Where an officer has probable cause to make a traffic stop, and also has motivations that are unrelated to the traffic stop

such as an intent to investigate suspicious activity, may the stop be deemed unconstitutional because it is pretextual?'" *Ferguson*, *supra*, 8 F.3d at 387.

{¶ 15} In *Ferguson*, the Sixth Circuit, sitting *en banc*, affirmed the district court's decision denying the motion to suppress. The Sixth Circuit found that the traffic stop was not violative of the Fourth Amendment because the police officer had probable cause to stop Ferguson and Lester based on the minor traffic violation of driving without a visible license plate. *Id*., 8 F.3d at 391-393. In so holding, the Sixth Circuit stated, in part:

"We address today only the issue of whether a traffic stop, which is supported by probable case but motivated -- at least in part -- by suspicions inadequate to support a stop, may be held to be unconstitutional because it is pretextual. We find that neither the *Smith* test [*United States v. Smith*, *supra*, 799 F.2d 704] of whether a reasonable officer *would* have stopped the car for a traffic violation but for the invalid motive (or its variations as found in the pretextual stop cases decided in this Circuit), nor the language of the standard set out by other circuits of whether the police officer *could* have stopped the car for a traffic violation is satisfactory in determining this issue. At least insofar as the 'would' test might be applied to the circumstances of a stop based upon probable cause, we find it difficult to distinguish, for example, between the officer's subjective intent and the 'objective evidence' of the officer's actual interest in investigating the kind of offense for which he made the stop. * * * As for the 'could' test, as we have indicated, no circuit adopting that test has expressly said that a stop can be justified merely by an after-the-stop determination that the officer theoretically could have stopped the car for a traffic violation, although he did not notice at the time of the stop that a violation had occurred. However, in our view, some of the language utilized by the courts that subscribe to the 'could' test is sufficiently imprecise to leave it susceptible of such a reading.

"We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. * * * We focus not on whether a reasonable officer 'would' have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer 'could' have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.

"We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*. Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop. * * * [I]f the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.

"We believe that by using this standard, we will better achieve the objective assessment of the officer's actions required by the [United States] Supreme Court. * * * We also will avoid some of the problems inherent in the 'would' and 'could' tests. By adopting this standard, we make explicit that which was simply an inference under our prior cases: traffic stops based on probable cause, even if other motivations existed, are not illegal.

"We accomplish several things by holding that a traffic stop, supported by probable cause, of a vehicle as to which the officer also has suspicions of more nefarious activity, is not unreasonable because it is based at least in part upon other motivations. We ensure that the validity of such stops is not subject to the vagaries of police departments' policies and procedures concerning the kinds of traffic offenses of which they ordinarily do or do not take note. We ensure as well that those who are engaged in more nefarious activity are not insulated from criminal liability for those activities simply because a judge determines that the police officer who executed the traffic stop, had he been the mythical reasonable officer, would not have stopped them for the traffic offense that they in fact committed. We ensure that law enforcement officers who see actual violations of the law, even minor ones, are not left to ponder whether their actions in enforcing the law are appropriate. Finally, we ensure that the courts leave to the legislatures the job of determining what traffic laws police officers are authorized to enforce and when they are authorized to enforce them." (Emphasis *sic*.) *Ferguson*, *supra*, 8 F.3d at 391-392.

{¶ 16} We agree with the Sixth Circuit's cogent analysis of the issue. Specifically, we are in complete agreement with the Sixth Circuit that a traffic stop based upon probable cause is not unreasonable, and that an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner. Accordingly, we adopt the test outlined in *Ferguson*, *supra*, 8 F.3d at 391-393, and hold that where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.

{¶ 17} In the case at bar, Officer Klosterman clearly had probable cause to stop appellee based on the traffic violation (failure to signal a turn) which occurred

in the officer's presence. Thus, the stop was constitutionally valid.[2] Klosterman obtained appellee's driver's license and ran a computer check in connection with appellee's detention for the minor traffic violation. As a result, the check revealed that appellee had no driving privileges and no valid license. Thus, Klosterman cited appellee for the additional criminal offenses, which he had every right to do given the information obtained during the traffic stop. The Fourth Amendment to the United States Constitution, and Section 14, Article I of the Ohio Constitution, prohibit *unreasonable* searches and seizures. We find no constitutional violation here.

**{¶ 18}** As a final matter, we note that there are a number of reported Ohio appellate decisions adopting the "would" test or some similar standard for analyzing claims of pretextual traffic stops. See, *e.g.*, *State v. Bishop* (1994), 95 Ohio App.3d 619, 622, 643 N.E.2d 170, 171-172; *State v. Richardson* (1994), 94 Ohio App.3d 501, 505-508, 641 N.E.2d 216, 219-220; *State v. Spencer* (1991), 75 Ohio App.3d 581, 585, 600 N.E.2d 335, 337; and *State v. Whitsell* (1990), 69 Ohio App.3d 512, 523-524, 591 N.E.2d 265, 272-273. But, see, *State v. Carlson* (1995), 102 Ohio App.3d 585, 589-593, 657 N.E.2d 591, 594-597 (adopting the *Ferguson* approach to determining the validity of an allegedly pretextual traffic stop). Today, we specifically reject the views of those courts that have analyzed claims of allegedly pretextual traffic stops under the "would" standard. Rather, consistent with the views of those courts that have adopted the "could" test or a slight variation of that test (as in *Ferguson*), we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of

---

2. Given our determination that Officer Klosterman had probable cause to believe that a traffic offense had been committed based upon his observation that appellee failed to signal a turn, we need not reach the merits of appellant's contentions that Klosterman had a reasonable suspicion to support the stop based on the information he had previously obtained that the registered owner of the vehicle had no valid driver's license.

the officer's underlying subjective intent or motivation for stopping the vehicle in question.

{¶ 19} Accordingly, we reverse the judgment of the court of appeals, vacate the trial court's decision granting appellee's motion to suppress, and remand this cause to the trial court for further proceedings on the pending criminal charges.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and STRATTON, JJ., concur.
PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 20} You drive by a policeman, and for some reason, he doesn't much like the looks of you. Maybe your car is shabby; maybe you are. Maybe you are out late in a high-crime neighborhood. Maybe you are in a low-crime area, but you are part of a high-crime demographic group. The reason does not much matter— to him you are a suspicious character, that's all. The policeman pulls up behind you. You *will* make a mistake. You say you *did* use your turn signal to change lanes? He didn't see it. Or, prove to him that you did *not* exceed the speed limit by one mile per hour when you were busy looking at him in your rear-view mirror. You'll never be charged with the violations—you're just being stopped and detained to see if his hunch about you was right. Perhaps he'll ask if you mind if he searches your car. You wouldn't refuse unless you had something to hide, right? You have just been detained and possibly searched because someone did not like the looks of you.

{¶ 21} The majority holds today that police officers, based upon a hunch of nefarious activity, may stop a car they would not stop under any other circumstances. I agree with the trial and appellate courts in this case which held, citing *United States v. Smith* (C.A. 11, 1986), 799 F.2d 704, 708, that the relevant

inquiry is not whether the officer could have made the stop, but whether a reasonable officer would have done so in the absence of the invalid purpose. The majority opinion allows the existence of a technical offense to obfuscate the true motivation for what otherwise would be an invalid stop. If the stop would not have been made but for the invalid purpose, the invalid purpose is the motivation behind the stop. The fruits of such stops should be suppressed, as the lower courts correctly held.

{¶ 22} Fourth Amendment cases are some of the most difficult cases for judges to decide for the simple reason that it is most often unsympathetic people who seek protection from unlawful searches. These cases are brought by persons confronted with damning evidence, which evidence, they claim, while relevant and probably persuasive, was unlawfully gained and ought to be ignored. While it is always a criminal defendant seeking the Fourth Amendment's protection, ultimately Fourth Amendment jurisprudence protects us all from unreasonable intrusions on our liberty. It was not a criminal who lost in this case today—all of us who value our freedom did.

———————————