OPINION
Kimberly Cross was charged with driving under the influence of alcohol in violation of R.C. 4511.19 and driving "in a weaving manner" in violation of Kettering ordinance 432.38(b). After her motion to suppress evidence was overruled, Cross pleaded no contest to the DUI charge in return for a dismissal of the weaving charge. The trial court found Cross guilty and imposed a sentence, fine, and license suspension. Cross advances a single assignment of error on appeal:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE OFFICER STOPPED THE CAR BASED ON PROBABLE CAUSE THAT THE DRIVER HAD COMMITTED A TRAFFIC OFFENSE.
Although Cross has framed her assignment solely in terms of "probable cause," the test for determining whether a traffic stop was legitimate is whether the police officer possessed an articulable reasonable suspicion that a traffic violation had occurred or was occurring. See Terry v. Ohio (1968), 392 U.S. 1;Delaware v. Prouse (1979), 440 U.S. 648. Although the syllabus inDayton v. Erickson (1996), 76 Ohio St.3d 3, upon which Cross relies, is stated solely in terms of "probable cause," we believe it inadvertently states a more stringent test for a legitimate traffic stop than was intended by the court. See Erickson at 11-12, where the court states that a stop is legitimate if based on an articulable reasonable suspicion or probable cause to believe that a traffic violation has occurred or is occurring. A probable explanation of the Erickson syllabus is that the court was not concerned with the standard for a legitimate traffic stop but, rather, with whether a "pretextual" traffic stop was unlawful so as to require suppression of the fruits of the pretextual stop. Furthermore, the officer in Erickson did have probable cause to believe the defendant had committed a traffic violation. We think the same reasons explain why Whren v. United States (1996),517 U.S. 806, which Cross also relies upon, speaks only in terms of probable cause. Although a police officer's observations will often provide the officer with probable cause to believe a specific traffic violation has occurred or is occurring — e.g., the failures to signal turns in Erickson and Whren — this will not always be so. It is not unusual for a police officer to have an articulable reasonable suspicion that he is observing an alcohol impaired driver without observing a specific traffic violation that would furnish the officer with probable cause to make a traffic stop.
* * *
Kettering ordinance 432.38(b) styled "weaving course" provides:
 No person shall operate a motor vehicle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law.
As it relates to the "weaving course" offense, Sgt. Kathleen Zaborowski, the arresting officer, testified on direct and redirect as follows:
 Q. And, Sergeant back on March 15th about two o'clock, er, 1:53 in the morning, you saw an `86 grey Honda Accord four-door on Stroop between Woodman and Braddock. Is that correct?
A. Yes, I did.
Q. You stopped that car, is that correct?
A. Yes.
 Q. Did you stop it just on a gut feeling or how did you, did you have a reasonable and articulable suspicion that some wrong doing that caused you to stop it?
A. It was a reasonable and articulable suspicion.
 Q. And, what was that? What did you see that caused you to stop that car?
 A. I first saw the car when I was southbound on Woodman Drive in the left lane, the 3900 block of Woodman Drive. At the intersection of Stroop Road, she got into the left turn lane and made a very wide turn onto eastbound Stroop Road from Woodman Drive. She went completely into the right through lane, then immediately in one continuous motion went back to the left through lane. Then the same motion went from the left through lane and crossed the double center lane.
Q. Double yellow line?
 A. Double yellow line. And, then back into the left lane.
 Q. As she got in the area of Pobst Drive, what happened?
 A. There's a concrete median there and she again swerved to the left and had to quickly swerve again to the right to avoid hitting the concrete median.
 Q. Is this where you turned on your lights in an attempt to stop the car?
A. Yes.
Q. Did it stop?
A. Not . . .
Q. Immediately . . .
A. Not immediately, no.
Q. What happened?
 A. She continued on, she braked and went slower, but she still continued to weave until we got up to Braddock. And, then she got into the left lane, it's the left turn lane on Braddock, and then just abruptly stopped in the middle of the left turn lane.
* * *
 Q. Officer when she drove over the double yellow line, you said she did that by approximately a tire width?
A. Yes.
 Q. And, for what distance did she travel over the double yellow line?
A. Approximately twenty feet.
Q. Is that a violation of traffic laws?
A. Yes, it is.
Sgt. Zaborowski testified that after Cross stopped her car, she approached Cross, who exhibited classic signs of alcohol impairment and performed poorly on field sobriety tests, resulting in her arrest for DUI. Cross does not contend that Sgt. Zaborowski lacked probable cause to arrest her for DUI. Rather, she contends that Sgt. Zaborowski had no right to stop her, and that the officer's subsequent observations should therefore have been suppressed.
We disagree. The testimony of Sgt. Zaborowski demonstrated an articulable reasonable suspicion, indeed probable cause to believe, that Cross was violating the weaving course ordinance prior to her stopping Cross. Accordingly, her subsequent observations of Cross which gave rise to probable cause to arrest for DUI were not subject to suppression.
The assignment of error is overruled.
The judgment will be affirmed.
BROGAN, J. and FAIN, J., concur.