**The STATE of Ohio**

v.

**CULVER.**

Ashtabula County Court,
Eastern Area, Jefferson, Ohio.

Nos. 99 CRB 611 and 99 TRC 5665.

Decided March 24, 2000.

*Thomas L. Sartini,* Ashtabula County Prosecuting Attorney, and *Susan R. Thomas,* Assistant Prosecuting Attorney, for plaintiff.

*Gessner & Platt Co., L.P.A.,* and *George E. Gessner,* for defendant.

---

ROBERT S. WYNN, Judge.

In these cases defendant stands charged with possession of marijuana under Ohio Revised Code Section 2925.11(A), (C)(3), possession of drug paraphernalia under R.C. 2925.14(C)(1), and operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (3).

A timely waiver has been filed in these cases by the defense.

Defendant filed his motion to suppress in each case number on December 23, 1999. An identical motion was filed in each case number. A hearing upon the motions was scheduled and heard on March 6, 2000.

At the outset of the hearing, the parties stipulated that the arrest of defendant was a warrantless arrest. Further, the defense and the state agreed that the scope of the suppression motion and hearing is limited to the narrow issue of whether or not the officer made a valid traffic stop of defendant. Due to this agreement and stipulation to the evidence, the thrust of defendant's motion to suppress and this court's decision are confined to this narrow issue of the lawful propriety of the investigative detention of defendant—it is the initial stop phase of this scenario that is challenged by defendant's suppression motions.

The court finds that Officer Blon did have a reasonable suspicion of the existence of illegal activity to justify a stop of defendant's motor vehicle. Blon had a reasonable factual basis from which to conclude that a juvenile was in the back seat of defendant's vehicle in violation of the Jefferson Village Code of Ordinances regarding curfew. Blon also observed defendant proceed forward through the intersection of Chestnut Street and Jefferson Street out of the left-turn-only lane.

Defendant's motions to suppress are overruled.

I

The court finds that on November 26, 1999, Officer Blon of the Jefferson Village Police Department was working an 11 p.m. to 7 a.m. shift while in a marked cruiser. At about 2:20 a.m., his attention was drawn to a white 1995

Oldsmobile in the well-lit parking lot of Dairy Mart at the corner of Walnut Street and North Chestnut Street in the village of Jefferson, County of Ashtabula, and state of Ohio. Blon observed that one of the five persons in the Oldsmobile was an individual, James Bluhm, whom Blon knew to be a juvenile. Blon knew this because the Jefferson Village Police Department had had prior dealings with Bluhm as a juvenile in the recent past. Given the early morning hour, Blon further knew that as a juvenile Bluhm was potentially in violation of the Jefferson Village Ordinance dealing with minors' curfew. Blon identified defendant Culver as the driver of the motor vehicle in question. Blon followed the auto out of the Dairy Mart parking lot east on East Walnut Street, then south on Market Street, then west on East Jefferson Street. Traffic was light to none. At the intersection of Jefferson Street and Chestnut Street for westbound Jefferson Street traffic there is a left-turn-only lane and also a second lane for through traffic headed forward or west on Jefferson Street. Defendant operated his motor vehicle entirely into the left-turn-only lane and came to a stop at the red light. Once the light turned green, defendant, without signaling, drove forward through the intersection out of the left-turn-only lane. Blon turned on his emergency lights, defendant pulled over, and Blon told him why he had stopped him. Defendant was not cited with any minor misdemeanor traffic violations nor was he cited with curfew violation. Blon's investigation at the stop disclosed that in fact there were two juvenile passengers in the motor vehicle operated by defendant. Blon ran the vehicle registration and learned that the vehicle was at that time registered to defendant.

The original BMV 2255 form completed by Blon and also the yellow copy filed with the court recited the aforementioned two reasons for the traffic stop of defendant but apparently defendant's copy did not contain those recitals.

Later that morning Blon tried to contact Bluhm's mother without success.

Defendant testified at the suppression hearing. He had consumed alcohol earlier on the day in question, not less than four or five beers around the dinner hour. He drove to Dairy Mart on November 26, 1999, to obtain more alcoholic beverages.

## II

The sole issue is whether Blon had reasonable suspicion to justify the stop of defendant's Oldsmobile. This court holds that he did.

The United States Supreme Court first set out a standard for an investigative stop in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. That case upheld an investigative detention by an experienced detective who saw a defendant and associates lingering on a street corner, looking into a store window, then

conferring about it. The detective's suspicions arising out of his observations sufficed to support his stop of the defendant even though no criminal conduct had been observed. Chief Justice Warren stated in the opinion of the court: "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

The United States Supreme Court soon extended the *Terry* rules to other fact patterns involving motor vehicles. In *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, the court upheld a limited investigative intrusion. The court held that the officer acted justifiably upon an informant's tip by reaching into a vehicle and removing a gun from the defendant's waist. In the context of the United States Border Patrol's authority to stop motor vehicles in a search for illegal aliens, the court in *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, held that a stop of a motor vehicle was unreasonable and violative of Fourth Amendment protections where the stop was made based solely on the race of the occupants. In a frequently cited decision the United States Supreme Court found that a plain view search of a motor vehicle was unreasonable under the Fourth Amendment where the officer who stopped the vehicle had not observed any violations or suspicious activity but had made the stop in order to check only for the driver's license and the vehicle's registration. *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

Justice White stated in the opinion of the court, "Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." *Delaware v. Prouse, supra,* at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673.

*Prouse* also stands for the principle that a traffic stop constitutes a Fourth Amendment seizure and to determine the validity thereof one must balance the public's privacy interest against legitimate government interests to determine whether the seizure was reasonable. *Id.* at paragraph 2a of the syllabus.

"The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno* (1991), 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302. And the courts have consistently held that the reasonableness of an investigative stop by a police officer is to be determined upon a consideration of the totality of the surrounding circumstances. *United States v. Cortez* (1981), 449 U.S. 411, 101

S.Ct. 690, 66 L.Ed.2d 621; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus.

At one time the courts in Ohio entertained defense arguments about pretextual stops. *State v. Whitsell* (1990), 69 Ohio App.3d 512, 523, 591 N.E.2d 265, 272. The *Whitsell* test held that "a pretextual stop depends upon whether a reasonable police officer, confronted with ordinary reasonable suspicion, would have chosen under the circumstances to proceed with making a detention in the absence of an improper motive." *State v. Richardson* (1994), 94 Ohio App.3d 501, 507, 641 N.E.2d 216, 220.

■ However, recent case decisions have eliminated such analysis of pretextual stops. What matters now in a traffic stop is that there exists some objective indication that a violation has been committed, regardless of the officer's real motives. *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

■ In this case, Blon had a dual basis for performing an investigative stop of defendant's motor vehicle. He had good reason to believe that a juvenile was in the back seat of the car in violation of Section 648.11 of the Jefferson Village Codified Ordinances. He was familiar with Bluhm, who had been involved with the Jefferson Police Department on prior occasions as a juvenile. Therefore, he had an articulable and reasonable suspicion that at least one of the occupants of the motor vehicle was violating the curfew. See *Akron v. Fair* (1994), 68 Ohio Misc.2d 40, 646 N.E.2d 1205.

■ Blon also observed the commission by defendant of a violation of the traffic code. He saw Culver pull out straight ahead from the left-turn-only lane without signaling, arguably a violation of R.C. 4511.25(A) or 4511.33(B), or both. The Eleventh District Court of Appeals "has repeatedly held that a minor violation of a traffic regulation * * * that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation." *State v. Yemma* (Aug. 9, 1996), Portage App. No. 95–P–0156, unreported, 1996 WL 495076. Even if a minor misdemeanor traffic conviction would not be obtainable upon the facts, nonetheless, such operation still gives rise to reasonable suspicion to stop a motor vehicle.

Given the totality of these circumstances it would have been unusual if Blon had failed to initiate an investigative stop of defendant's motor vehicle.

The motions to suppress are overruled.

IT IS SO ORDERED.

*Judgment accordingly.*