The STATE of Ohio, Appellee,

v.

DAVIS, Appellant.

[Cite as State v. Davis (2000), 140 Ohio App.3d 751.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000137.

Decided Dec. 1, 2000.

*Terrence R. Cosgrove*, City Prosecutor, and *Gertrude Dixon*, Assistant City Prosecutor, for appellee.

*Amy S. McDonough*, for appellant.

HILDEBRANDT, Presiding Judge.

Defendant-appellant Roger Davis appeals from the judgment of the trial court convicting him of obstructing official business in violation of R.C. 2921.31. We affirm the judgment.

Two uniformed police officers in a marked cruiser were driving in the Clifton area of Cincinnati, Ohio, when they observed Davis crossing the street in front of them. At trial, the officers testified that they believed that Davis had crossed the intersection against the light. They decided to issue a citation for a pedestrian violation. When they pulled the cruiser over, one of the officers, Kelly Cassidy, called out to Davis to stop, but Davis did not stop, nor did he indicate whether he had heard the officer call out to him.

The other officer in the car, Shyane Baker, got out of the cruiser and began to follow Davis, yelling at him to stop, but Davis kept walking. Cassidy then pulled up beside Davis in the cruiser, got out of the car, and again ordered him to stop. This time, Davis turned to face the officer, but he then turned around and continued walking. Baker stated that after Davis saw Cassidy, Davis quickened his pace. Baker and Cassidy continued to follow Davis, calling to him to stop. Eventually, he did stop, and the officers approached him, telling him to remove his hands from his pockets. He initially refused to do so, according to Cassidy.

Baker then attempted to place handcuffs on Davis, and he resisted. With the assistance of Cassidy and four to six other officers who arrived at the scene, Baker succeeded in placing handcuffs on Davis and placing him in a police cruiser. Davis was charged with obstructing official business, and he was convicted of the offense following a bench trial. At the trial, Davis was served with a citation for the pedestrian violation. But the court acquitted him of that violation, holding that the state had presented insufficient evidence that the pedestrian signals at the intersection were operating properly.

In his first assignment of error, Davis claims that the police officers lacked probable cause to arrest him. He claims that he could not have been arrested for the minor-misdemeanor pedestrian offense that the officers allegedly witnessed, and that because the officers did not attempt to issue him a citation at the time, he could not have been arrested for interfering with its issuance.

First, we reject the state's argument that the constitutionality of the arrest was not raised below. The record demonstrates that the propriety of the arrest was challenged in the proceedings below and has therefore not been waived for appeal.

■ Next, we hold that, under the circumstances of this case, the arrest was lawful. The officers had the right to detain Davis to issue a citation for the

alleged pedestrian violation, even though they were prohibited under state law from arresting him for the minor misdemeanor. See *State v. Richardson* (1994), 94 Ohio App.3d 501, 504, 641 N.E.2d 216, 218. But the evidence shows that Davis became aware that the officers were trying to detain him and continued to walk away from them. His refusal to stop gave the officers probable cause to believe that he was impeding the performance of their duty in violation of R.C. 2921.31. At that point, the officers had probable cause to arrest him. We therefore overrule Davis's first assignment of error.

Having reviewed the record in its entirety, we also reject Davis's claims that his conviction was based on insufficient evidence and was contrary to the manifest weight of the evidence. Viewing the evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Furthermore, we have weighed all of the evidence and considered the credibility of the witnesses, and we conclude that, in resolving the conflicts in the evidence, the trier of fact did not clearly lose its way or create a manifest miscarriage of justice. See *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, J., concurs.

GORMAN, J., dissents.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

GORMAN, Judge, dissenting.

I respectfully dissent from the majority's decision because, in my view, the evidence was insufficient to convict Davis of obstructing official business in violation of R.C. 2921.31.

According to the testimony of the police, Davis was not charged with obstructing official business because he had resisted the officers' efforts to handcuff him. Rather, the officers testified that they had decided to charge Davis before the handcuffing because, by walking an extra distance after they had ordered him to stop, Davis was obstructing their effort to give him a ticket for jaywalking. As I see it, a conclusion that Davis's failure to stop sooner "hamper[ed] or impede[ed]

a public official in the performance of his lawful duties" permits the law to reach beyond what is reasonable.

Discussing the scope of R.C. 2921.31 in *State v. Stayton* (1998), 126 Ohio App.3d 158, 164, 709 N.E.2d 1224, 1227, we said in language that is particularly appropriate here:

"Certainly there is a level of hindrance which is simply too casual, remote or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must, therefore, be necessarily viewed as a continuum along which, at a certain point, the line is crossed."

The reason that the arresting officers charged Davis with a violation of R.C. 2921.31 was not that he did not stop but that he did not stop quickly enough. Significantly, one arresting officer acknowledged that when he first called out to Davis, "he [Davis] might not have heard me." When asked on cross-examination why the officers had arrested him, the officer testified, "By not stopping, as we were yelling for him to stop, by not stopping, by turning around and looking at us and keeping going, he was obstructing our official business * * *."

There is no requirement that citizens stop on a dime when beckoned by the police. The distance between Officer Cassidy's initial order to stop and the point where Davis actually did stop, turn around, and wait for the officers (a block or less) was insufficient to give rise to criminal conduct. Significantly, Davis, though he may have quickened his pace, never attempted to run. Davis's words to the police after he did stop were rude, disrespectful, and ill chosen, but they were within the orbit of speech that police officers must expect and tolerate in the course of their official duties. To criminalize this type of behavior suppresses a person's legitimate right to protest his or her detention, while threatening to impose a code of strict, if not absolute, obedience upon the citizenry when confronted by the police.

Significantly, the Third and Fourth Appellate Districts have held that actually *fleeing* from a request to stop does not "constitute the type of affirmative act required by the legislature to sustain a conviction for the specific offense of obstructing official business." See *State v. Smith* (Mar. 31, 2000), Allen App. No. 1-99-65, unreported, 2000 WL 381612 (citing analogous decisions); *State v. Gillenwater* (Apr. 2, 1998), Highland App. No. 97CA0935, unreported, 1998 WL 150354. In *Gillenwater*, the court observed, "If the legislature had intended such conduct to constitute an offense, we believe that it would have enacted legislation to that effect, as it has with other flight situations and failure to comply with an

officer's order." We need not reach this issue here, however, because Davis did not even flee from the request to stop; he merely took more time to stop than the police thought necessary. But it is noteworthy that even if Davis had turned and ran, according to the Third and Fourth Appellate Districts, he would not have been guilty of obstructing official business.

Admittedly, the situation escalated after Davis was (wrongly, in my view) charged with obstructing official business. I could perhaps agree with the majority if Davis's conviction arose out of his belligerent behavior following his decision to stop. My reading of the record, however, convinces me that Davis's arrest and conviction arose out of his failure to stop quickly enough to satisfy the officers' sense of their own authority. Such was not a crime. Accordingly, I would reverse and discharge Davis from further prosecution.