Brigitte E. Morr is appealing from the decision of the Clark County Municipal Court convicting and sentencing her of driving under the influence of alcohol and driving with a prohibited concentration of alcohol on her breath, violations of both Section4511.19(A)(1) and (A)(3), following her plea of no contest and following the dismissal by the State of two additional charges of a lane violation and a failure to wear a seatbelt, violations of Section 4511.25 and 4513.263.
Morr filed a motion to suppress all evidence obtained from her, including observations of the arresting officer and her BAC test score of .16. The motion was overruled after a hearing. On appeal, Morr presents essentially the same three challenges to her conviction and sentence as she presented to the trial court, in the following three assignments of error:
 1. THE COURT ERRED IN FINDING THAT THE ARRESTING OFFICER HAD REASONABLE ARTICULABLE SUSPICION TO STOP THE MOTOR VEHICLE AND DETERMINE WHETHER ANY LAWS OF THIS STATE HAD BEEN VIOLATED.
 2. THE COURT ERRED IN FINDING THAT THE OFFICER POSSESSED PROBABLE CAUSE TO ARREST THIS DEFENDANT FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL.
 3. THE COURT ERRED IN FAILING TO SUPPRESS THE TEST RESULTS OF DEFENDANT/APPELLANT, AS THE SAME WERE INVOLUNTARILY OBTAINED.
 I.
In her first assignment of error, Morr challenges the validity of the stop of her vehicle by Officer Harold Myers of the Ohio State Highway Patrol on the night of January 9, 1997, shortly after 2 a.m. As to the circumstances of the stop, Patrolman Myers testified at the suppression hearing as follows:
 Q. I call your attention to approximately 2:13 a.m. on that morning. Do you know about where you were at that time?
 A. I was in Clark County, State of Ohio, on Springfield-Xenia Road.
 Q. Okay. And did you happen to observe a vehicle at that time driving southbound on Springfield-Xenia Road?
A. I was driving northbound.
Q. Northbound?
A. Right.
 Q. Did you happen to observe a vehicle driving northbound on that street?
A. Yes, I did.
Q. What type of vehicle was that?
A. It was a white Chevy vehicle.
 Q. What did you observe as you were following that vehicle?
 A. I was following, observing the driving of the vehicle, northbound on Springfield-Xenia. As I followed the vehicle on Springfield-Xenia northbound, in front of Morgal Tool Company, I observed the vehicle go off the right side of the road into the gravel portion of their lot approximately three feet and drift back to the left. I continued to follow the vehicle. Other observations were made. Some vehicle defects such as license plate light was not illuminated where I couldn't see the plate. I continued to follow the vehicle into the City Limits of Springfield. At this time, I continued to follow. I paced the speed of the vehicle at 46 in a 35.
 Q. How do you pace somebody? What do you mean by pace?
 A. It's just where you gauge the distance between your car and their car and you don't gain any ground or lose any ground and that's a point with a certified calibration of the patrol car will indicate that he vibrated on. You gauge everything and you correlate it together and you get a pace speed.
 Q. After observing these violations, what happened then?
 A. I activated my overhead lights and I stopped the vehicle right there near Robinson Drive that would pull into a private business. (Tr. 4-5).
Morr essentially argues in her brief on appeal that her marked lane violation (which she does not deny but explains that she was simply adjusting her stereo, Tr. 36) is de minimis and, therefore, not worthy of a stop to investigate alcohol impairment. However, Morr admitted at the suppression hearing that she probably was still speeding after entering the city limits (Tr. 30), and the officer's observation of an unlighted license plate on her car was never contested. Thus, we have a case where three clear traffic violations were observed by the officer and under the rule announced by the Supreme Court in Dayton v. Erickson
(1996), 76 Ohio St.3d 3, any one of these traffic violations, no matter how minor, justifies a traffic stop even if the officer believed that he might have a case of alcohol impairment to investigate.
One of the arguments advanced by Morr on appeal under this assignment of error is that the officer's statement that she was speeding "is suspect" because he had to pursue her and in so doing, exceed the speed limit or he would never have caught her. We fail to understand the rationale behind this argument. Obviously, in any case where a police officer is pacing a vehicle exceeding the speed limit, the officer, in order to stop the vehicle, would have to exceed the speed limit himself at a faster rate than the suspect vehicle operator. How this scenario weakens the officer's observations of a speeding vehicle escapes us.
The first assignment of error is overruled.
 II.
In her second assignment of error, Morr contends that the officer lacked probable cause to arrest her for driving under the influence of alcohol. Morr first argues here that the officer must have been "sitting outside the bar" and followed her simply because she had exited a bar and not for any faulty driving on her part. We fail to see what this has to do with the case. Even if it were true, what difference would it make? Actually, police officers are to be commended for watching patrons exiting a bar late at night and making sure they are not hazardous to other drivers or themselves on the highways due to alcohol impairment.
Officer Myers testified at the suppression hearing with regard to the circumstances leading up to Morr's arrest as follows:
 Q. Okay, when you approached the driver's side door and began speaking with her, did you notice anything about her appearance or the way she was acting?
 A. What I noticed about the defendant was when she spoke to me, her speech was slow and deliberate. She was delayed in responding to everything that was asked. Her replies were just real slow and delayed so I inquired if she had been drinking.
Q. And what was her response?
 A. At first she told me she hadn't had anything to drink. But as she spoke to me I could smell alcohol on her breath.
 Q. Okay, and based on these observations, what did you do then?
 A. Based on my observations, I asked her to exit the vehicle. (Tr. 6).
* * *
 Q. What, if anything did you observe when she exited the vehicle? Can you describe that?
A. When she exited, she stumbled sideways.
 Q. Okay, and after she stumbled, did you do anything?
 A. Had her come to the rear of her car between my car and I administered a horizontal gaze nystagmus test. (Tr. 7-8).
* * *
Q. And you said she scored 6 points?
A. Yes.
 Q. Did you ask her to submit to any coordination tests after the horizontal gaze nystagmus test?
A. Yes, I did.
Q. Okay, and did she comply with that request?
A. No, she did not.
Q. How did she respond, if at all?
 A. She became belligerent, stating she couldn't do them if she was drunk or sober.
 Q. When you say she was belligerent, what do you mean by that?
 A. She just began screaming and cursing, making a spectacle of herself.
Q. Making what of herself?
A. Spectacle.
 Q. Okay. And after that did you make a determination as to whether she was intoxicated at that time?
A. Yes, I did.
Q. What was your determination?
 A. That she was definitely impaired and should not be driving.
 Q. What did you do after you make that determination?
A. I placed her under arrest and handcuffed her.
 Q. How did she respond when you did that? If at all?
 A. She just continued on with the cursing and screaming as I placed her in the front seat of the patrol car.
 Q. Okay, when you placed her in the patrol car, did you do anything after that?
 A. Yes, I did. I went around and, throughout the contact, I Mirandized her, read her her constitutional rights. (Tr. 9-10).
In her brief on appeal, Morr attempts to explain the way these indicia of alcohol impairment observed by the officer on the grounds that she was merely fatigued and her clothing had been soaked with alcohol due to an accident at the bar and that, therefore, any odor of alcohol on her breath was insignificant. Furthermore, she attacks the HGN test as unreliable and questioned the officer's expertise in administering it. In cross-examination, however, Officer Myers presented a convincing account of his training in administering the HGN test. (Tr. 15). Given all the indicia of alcohol impairment observed by the officer, including Morr's out of control behavior when she refused further field sobriety tests, we cannot find that the trial court's decision that the officer had probable cause to arrest Morr for DUI was an abuse of discretion. In fact, we have held that a strong odor of alcohol is sufficient by itself to provide a police officer with reasonable suspicion that an individual is driving with a blood alcohol content that exceeds the legal limit and, therefore, justifies the officer in asking the individual to submit to a field sobriety test. See, e.g., State v. Schott (May 5, 1997), Darke App. No. 1415, unreported; State v. Osborne (Dec. 13, 1995), Montgomery App. No. 15151, unreported.
We find more than sufficient grounds in the record here to provide the officer with probable cause for the arrest of Morr for DUI.
The second assignment of error is overruled.
 III.
In her final assignment of error, Morr argues that the test score on the breathalyser should be suppressed because she took the test under coercion. She argues that Officer Myers promised to release her from incarceration if she would submit to the breath test, and she was, therefore, coerced into taking it. (Tr. 33-34). Officer Myers testified very definitely to the contrary, that he did not offer her any inducements or threats with regard to the test (Tr. 21-22). The trial court resolved this issue in its decision on the suppression motion as follows:
 As to the question of defendant being coerced into taking the BAC breath test, the testimony is in direct conflict. The Trooper states clearly that no form of threat or coercion took place.
 Defendant testifies that she felt she would go to jail if she did not submit to the test.
 A close examination of the testimony results in the Court not being persuaded that any coercive actions were taken by the Trooper. While it is very believable in the custodial setting that Defendant was fearful and/or apprehensive, the Court finds no actions taken by the Trooper that directly or indirectly inappropriately caused Defendant to believe she must take the test in order to avoid going to jail. (Doc. pp. 65-66).
Where a trial court has to make a choice between the credibility of witnesses and their conflicting testimony, we do not second guess the trial court's decision. Dayton v. Versic
(Mar. 15, 1996), Montgomery App. No. 15223, unreported. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. The United States Supreme Court has even stated that where a trial court's decision is expressly anchored in credibility evaluations of witnesses who testified during a suppression hearing, it is beyond appellate review. Anderson v. City of Bessemer (1985), 470 U.S. 564, 574,105 S.Ct. 1504, 1512, 84 L.Ed.2d 518.
The third assignment of error is overruled, and the judgment is affirmed.
WOLFF, J. and GRADY, J., concur.
Copies mailed to:
Paul J. Kavanagh
Joseph M. Juergens
Hon. Eugene S. Nevius