OPINION
David V. Cox, Jr., defendant-appellant, was indicted for possession of cocaine in violation of R.C. 2925.11, being a felony of the fifth degree.
Appellant filed a motion to suppress evidence which was overruled by the trial court.
After being advised of his rights pursuant to Crim.R. 11, appellant entered a plea of no contest to the charge and was found guilty. After a pre-sentencing investigation, the court imposed a period of community control for two years basic supervision with other conditions.
Defendant appeals, asserting the following assignment of error:
 A TRIAL COURT ABUSES ITS DISCRETION WHEN IT OVERRULES A MOTION TO SUPPRESS EVIDENCE WHERE A POLICE OFFICER, IN A NON-HIGH-CRIME NEIGHBORHOOD, STOPS A BICYCLIST FOR A MINOR TRAFFIC VIOLATION AND CONDUCTS A PROTECTIVE FRISK, ABSENT A REASONABLE SUSPICION THAT THE BICYCLIST IS ARMED AND DANGEROUS.
On July 8, 1998, at about 3:30 a.m., Columbus police officer Steve Stack stopped defendant who was riding a bicycle through the area for failure to have a light on his bicycle as required by Columbus City Code 2173.06(A). It is undisputed that defendant was in violation of the above ordinance which constituted a minor misdemeanor violation.
Officer Stack testified that he was on patrol alone in a marked cruiser when he observed defendant riding his bicycle at night without lights. Officer Stack stated that he stopped defendant "basically to get his identification and to do a warrant check." He further stated:
 A. HE [DEFENDANT] GAVE ME HIS IDENTIFICATION, AND I KNEW THAT I NEEDED TO RUN A WARRANT CHECK ON HIM AT THAT TIME, SO TO DO THAT, I NEEDED TO USE MY WALKIE-TALKIE, AND IN ORDER TO DO THAT I WOULD HAVE PUT MYSELF IN A COMPROMISED POSITION.
Q. MEANING WHAT?
 A. MY HANDS WOULD HAVE BEEN OCCUPIED, AND MY ATTENTION WOULD HAVE BEEN DIVERTED MOMENTARILY AWAY FROM HIM TO THE WALKIE. SO I ASKED HIM INITIALLY IF HE HAD ANY GUNS OR WEAPONS ON HIM AT THAT TIME. HE SAID NO. SO I JUST ASKED HIM DID HE MIND IF I CHECK. HE SAID NO, GO AHEAD; AND AS I APPROACHED HIM, HE RAISED HIS HANDS UP OVER HIS HEAD IN A GESTURE INVITING ME TO LOOK, AND AS I DID, I CAUGHT SOMETHING OUT OF THE CORNER OF MY EYE, WHICH IT WAS KIND OF SILVERY. IT IS HARD TO TELL DUE TO THE STREET LIGHTS. AT THE TIME I CAUGHT IT, FOLLOWED IT DOWN TO THE GROUND, LOOKED AT IT, AND BASED ON MY EXPERIENCE OBSERVED IT TO BE CRACK COCAINE, AND PLACED HIM UNDER ARREST AT THAT TIME.
 Q. NOW, HAD YOU EVEN GOTTEN TO THE POINT, OFFICER, WHERE YOU HAD BEGUN TO CONDUCT EITHER A PAT DOWN OR A SEARCH?
 A. I LEANED OVER AND PATTED HIS JACKET, AND THAT IS WHEN HE RAISED HIS ARMS UP. WHEN HE KNEW WHAT I WAS INTENDING TO DO AROUND HIS WAIST AREA, THAT IS WHEN HE RAISED HIS ARMS UP.
 Q. THAT IS WHEN YOU SAW SOMETHING FLYING THROUGH THE AIR?
 A. YEAH. HE PUT HIS ARMS UP OVER HIS HEAD. HE HAD IT IN HIS LEFT HAND.
Officer Stack was then asked:
 Q. * * * WHY DID YOU WANT TO CONDUCT A PAT DOWN THAT NIGHT?
 A. WELL, IT WAS NIGHT, I WAS BY MYSELF, I HAD NO PRIOR CONTACT WITH THE INDIVIDUAL. IT IS KNOWN, COMMON KNOWLEDGE TO PATROL OFFICERS THAT A LOT OF TIMES DRUGS ARE CURRIED VIA BICYCLE. DRUG DEALERS, DRUG SELLERS SOMETIMES CARRY WEAPONS, AND, LIKE I SAID, DUE TO THE FACT THAT I HAD TO RUN A RECORDS CHECK ON HIM, WARRANTS CHECK, IT WOULD HAVE MEANT PULLING MY WALKIE UP, GETTING THE RIGHT CHANNEL, TAKING MY EYES OFF HIM ONLY FOR A FEW SECONDS, IT WOULD HAVE GIVEN HIM THE OPPORTUNITY TO REACH IN HIS WAISTBAND AND PULL OUT A WEAPON IF HE HAD ONE.
On cross-examination, Officer Stack candidly admitted that, while he stopped him for both reasons that he was violating the ordinance concerning a light on the bicycle and to see if he had drugs on him, that the more prominent reason was to see if he had any drugs and/or weapons on him.
The trial court found Officer Stack to be candid and believable. Actually there was not much in the way of factual dispute. It is clear that defendant was violating a minor misdemeanor and that Officer Stack was entitled to stop him for that violation. Officer Stack was entitled to obtain identification from defendant and to run it through the computer to obtain a record check. The only real dispute was whether defendant consented to a pat down search for weapons while Officer Stack's attention was diverted temporarily as he operated his walkie talkie. Defendant contends that he did not give consent and Officer Stack stated that he did. In any event, the crack cocaine was found not through the officer's search, but because defendant attempted to secretly discard it and his attempt was observed by the officer.
The trial court found that Officer Stack had a legitimate concern about his own personal safety because the arrest occurred in the dead of the night when no one was around, that he had a suspicion that defendant might be carrying drugs, that drug carriers are often armed, and that he was justified to conduct a brief pat down to make sure that he was not going to place himself in jeopardy against assault by a deadly weapon while his attention was diverted.
In conducting an investigative traffic stop, a police officer may detain an offender for a period of time sufficient to run a computer check. Delaware v. Prouse (1979), 440 U.S. 648;State v. Carlson (1995), 102 Ohio App.3d 585. Here the stop was reasonable in that defendant was observed committing a traffic offense. If circumstances exist that would cause a reasonable officer to believe that his safety was in danger, the officer is entitled to conduct a pat down search of the individual limited in scope to measures necessary to determine whether the defendant is carrying a weapon. Terry v. Ohio (1968), 392 U.S. 1.
The trial court's finding, that Officer Stack acted reasonably in conducting a limited pat down search for weapons to protect himself from possible violence while his attention was at least, in part, diverted by conducting a computer check using his walkie talkie, was reasonable and should not be second-guessed by this court.
Even if the ordinance violation was used as a pretext to make the stop, the officer's primary motive being to search for drugs, the Terry search for weapons was not unconstitutional if there was a reasonable basis for the officer's concern for his own safety while completing the stop. See Whren v. United States
(1996), 517 U.S. 806; Dayton v. Erickson (1996), 76 Ohio St.3d 3.
It is important to note that the Terry search could be used only to determine if defendant had weapons that might be used to harm the officer and not to discover other objects that are not weapons. See State v. Milhouse (1999), 133 Ohio App.3d 527. However, in this case, defendant voluntarily exposed the illegal drug himself prior to the pat down search. Thus, the drug was discovered due to defendant's voluntary act and not as a result of a Terry search.
Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.
 _______________________ McCORMAC, J.
KENNEDY, J., concurs.
BRYANT, J., concurs separately.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.