OPINION
Defendant-appellant Jerome Bogle appeals from his conviction and sentence, following a no-contest plea, for Possession of Crack Cocaine. Bogle contends that the trial court erred by denying his motion to suppress evidence, upon the ground that it was the result of an unlawful search and seizure. From our review of the record, we conclude that the police officer had a reasonable basis to stop Bogle, based on her observation of a traffic violation. We conclude, further, that during the stop she had probable cause to arrest Bogle for driving without a license. We further conclude that her decision to have the car Bogle was driving towed was reasonable, under the circumstances. Finally, we conclude that her decision to search a console in the car, using the car key to unlock it, was both reasonable and in conformity with the policies of the Dayton Police Department concerning inventory searches. Consequently, we conclude that the trial court did not err when it denied Bogle's motion to suppress, and the judgment of the trial court is Affirmed.
 I
At 12:46 a.m., one morning in July, 2000, Dayton police officer Julie Swisher saw a car speeding down an alley. Swisher brought her police cruiser behind the car, which slowed down and made a right turn from the alley onto the street. Swisher described this turn as follows:
 At that point instead of making a proper right turn from an alley to an intersection, the driver actually went into the left lane rather than using the right lane and went over the yellow center line then maintained the left lane of travel. There was no traffic coming so I thought it was unusual that he would not take the right turn which is more practicable and which is the legal way to turn on to the street.
Because of what Swisher perceived to have been erratic driving, she concluded that the driver might be intoxicated, and she turned on her overhead lights, eventually effecting a stop. She described what happened when she approached the vehicle following the stop, as follows:
 I approached his vehicle at which point he had driver's window rolled down. I asked him if he had his driver's license with him, and he stated, "No, I do not have a driver's license." I asked him if he had any form of picture identification on him. He stated, "No," he did not. At that point I asked him to step out of the vehicle.
After patting Bogle down, Swisher placed him under arrest for having no driver's license. Her pat-down search resulted in finding $744 in United States currency on his person. Under a policy of the Dayton Police Department, because the amount of money exceeded $500, Swisher was required to call in a police sergeant to count the money. Dayton police sergeant Mark A. Spiers responded.
It was determined that there were no licensed drivers in the car. The car was parked, as a result of the stop, at a gas station, and was blocking a driveway. Swisher decided to have the car towed. Swisher conducted an inventory search of the car. She used the car key to open a locked console between the driver's seat and the passenger's seat. In the console, Swisher found two bags of what appeared to her to be crack cocaine.
Bogle was charged with Driving Without a License, and with Possession of Crack Cocaine. Bogle moved to suppress the evidence, contending that it was the result of an unlawful search and seizure. Following a hearing, the trial court denied his motion to suppress. Thereafter, Bogle pled no contest to Possession of Crack Cocaine. Bogle was found guilty, on his no-contest plea, and was sentenced accordingly. The record does not disclose what happened to the Driving Without a License charge, with which this appeal does not appear to be concerned.
From his conviction and sentence for Possession of Crack Cocaine, Bogle appeals.
 II
Bogle's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE, AS THE ARRESTING OFFICER WAS WITHOUT JUSTIFICATION TO INITIATE THE TRAFFIC STOP AND SUBSEQUENT ARREST OF APPELLANT.
Bogle first challenges the propriety of the stop. Bogle argues that the section of the Dayton Revised Code of General Ordinances cited by Swisher during her testimony at the suppression hearing, being Section 71.07, does not cover the violation she described in her testimony. Section 71.07 deals with the failure of a motorist to drive within marked lanes. This would seem to include within its proscriptions the crossing of the yellow center line, which Swisher testified she saw.
Parenthetically, Swisher described what she believed to be another offense, although she acknowledged it was not covered by Section 71.07. She described this offense as making a right turn without initially entering the right-most of two or more lanes of traffic when leaving the intersection. In other words, Swisher seems to be under the impression that a motorist, in making a right turn onto a roadway where there are two or more lanes leaving the intersection, must initially be in the right-most lane. Although this has no significance for the appeal, we disagree with Swisher. Dayton Revised Code of General Ordinances Section 71.30, and Ohio Revised Code 4511.36, which appear to be similar, if not identical, prescribe the manner of making a turn at an intersection. Division (C) of both the ordinance and the statute includes the requirement that, when making a left turn at an intersection where at least one of the roadways is restricted to one-way travel, the turn must be made "so as to leave the intersection, as nearly as practicable in the left-hand lane of the roadway being entered lawfully available to traffic moving in that lane." Division(A) of both the ordinance and the statute govern the making of right turns at intersections. This division contains no analogous requirement. Therefore, we are not aware of any authority for Swisher's proposition that a motorist, in making a right turn at an intersection, must initially enter the right-most lane of those lanes of traffic leaving the intersection.
In any event, Swisher observed Bogle crossing the yellow center line. This is clearly a traffic violation, regardless of any deficiencies in Swisher's legal analysis offered during her testimony. Where a police officer observes a traffic violation, the police officer is entitled to make a stop, irrespective of any other motives the police officer may have had for making the stop. State v. Cross (May 14, 1999), Montgomery App. No. 17316, unreported; following Dayton v. Erickson (1996),76 Ohio St.3d 3; and Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 135 L.Ed.2d 89. Thus, we conclude that the stop was lawful.
When Swisher approached Bogle, following the stop, and asked for his driver's license, Bogle told her that he did not have one. This admission gave Swisher probable cause to believe that Bogle had been driving without a license, in violation of R.C. 4507.02(A)(1), which is a first-degree misdemeanor. R.C. 4507.99(H). Thus, Swisher was entitled to arrest Bogle for that offense, which she did.
After arresting Bogle, Swisher decided to call for a tow truck to tow his car, because it "was blocking the normal flow of business" at the gas station where he had stopped. Spiers testified that the car could not have been left where it was, "because it was blocking the driveway of the business." Swisher testified that there were no licensed drivers in the car. Under these circumstances, we conclude that Swisher's decision to have the car Bogle was driving towed was reasonable.
Swisher conducted an inventory search of the interior of the car. Although Swisher was not familiar with the policy of the Dayton Police Department concerning inventory searches of locked containers, Spiers was. Spiers described that policy, during cross-examination, as follows:
 Q. What does your tow policy say regarding the inventorying of a locked trunk?
 A. You can check the vehicle, the entire vehicle, whether it's a locked box as long as you don't have to force entry. If there's a key, you can check the locked box, console, or the trunk or any valuable items that are in the vehicle or after talking about locked compartments such as a suitcase or something in the trunk, I would not open that unless I had the owner's consent. I would just note that there's a locked suitcase; however, the vehicle is inventoried for the protection of the tow company and the Police Department against allegations of theft and damage. We are so required to note any physical damage on the motor vehicle.
 Q. Well, I don't disagree with you about the valuable part, and it's your understanding that a locked glove box, you are required to look inside it?
A. During an inventory?
Q. Yes.
 A. Yes. The tow truck company has the key. If there's something in there, and we don't document it or there's nothing in there, and he comes back and says, "Listen, I had a stereo or I have five hundred dollars in cash inside the console," you know, and the tow driver had the key, we have to inventory it for their safety, yes.
Q. That's your understanding of the tow policy?
A. Yes, it is.
Based on Spiers' testimony, we conclude that Swisher's inventory search of the locked console, using the car key to open the console, was in accordance with the policy of the Dayton Police Department concerning an inventory search of a car that is going to be towed. We further conclude that the inventory search of the locked console was reasonable, for the reasons indicated in Spiers' testimony. Because the car key, which would necessarily be in the possession of the towing company, could open the locked console, it was reasonable to do an inventory search before surrendering the car and the key to the towing company, in order to make sure that the car's contents were properly accounted for.
We conclude that the stop, arrest and search were all reasonable and lawful. Accordingly, the trial court did not err in denying Bogle's motion to suppress, and Bogle's sole assignment of error is overruled.
 III
Bogle's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.