The STATE of Ohio, Appellant,

v.

DELEMOS et al., Appellees.

[Cite as *State v. Delemos* (2000), 140 Ohio App.3d 512.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18397.

Decided Nov. 17, 2000.

*Kirsten A. Davies,* Montgomery County Assistant Prosecuting Attorney, for appellant.

*Victor A. Hodge,* for appellee Felipe Delemos.

*Michael R. Pentecost,* for appellee David Allen.

WOLFF, Judge.

The state appeals from a judgment of the Montgomery County Court of Common Pleas that granted Felipe Delemos's and David Allen's motions to suppress evidence obtained as a result of a traffic stop.

The basic facts are undisputed. Delemos and Allen were traveling north on Interstate 75 in Montgomery County when they were stopped by State Trooper Richard Noel for an alleged traffic violation. Initially, Trooper Noel testified that the defendants' van had drawn his attention because of its slow speed and broken

taillight, but he later admitted, and other troopers testified, that a tip had been received from a federal agent indicating that this particular van might be transporting narcotics. Trooper Noel followed the van for several miles through Hamilton, Butler, and Warren Counties before stopping the vehicle in Montgomery County. As he entered Montgomery County, Trooper Noel activated his cruiser's video camera to record the van's appearance and movement, and this videotape, which is several minutes long and continues through the traffic stop, was admitted into evidence. While Trooper Noel prepared a traffic citation, he summoned a canine unit because "[w]e try to take [canines] around as many cars as we can when we have them stopped." The canine alerted aggressively to the back and side of the van. The troopers then searched the vehicle and found approximately four kilograms of cocaine in a hidden compartment. They also found a loaded gun under the passenger seat, which Allen later admitted belonged to him. Delemos was cited for a marked lane violation, Delemos and Allen were arrested for possession of drugs, and the van was impounded.

In January 2000, a grand jury indicted Delemos and Allen for possession of cocaine in an amount exceeding one thousand grams in violation of R.C. 2925.11(A), with major drug-offender specifications, and for possession of criminal tools in violation of R.C. 2923.24(A). Allen was also indicted for carrying a concealed weapon in violation of R.C. 2923.12(A) and for having a weapon while under disability in violation of R.C. 2923.13(A)(3).

Delemos and Allen filed motions to suppress, and the trial court conducted a hearing on the motions. The court concluded that the one white tail light had not rendered the van unsafe and had not been a valid basis for an investigative stop. The trial court also found, based primarily on the videotape taken from Trooper Noel's cruiser, that Delemos had driven within the lane as nearly as practicable and that Delemos's driving had not given Trooper Noel grounds to stop him. Accordingly, the trial court granted the defendants' motions to suppress on June 30, 2000.

The state appeals, raising one assignment of error:

"The trial court erred in granting appellees' motions to suppress because Trooper Noel not only had reasonable articulable suspicion, but probable cause, that a traffic violation was being committed and, therefore, the stop was valid under the Fourth Amendment."

The state argues that the traffic violations attested to by Trooper Noel, which included but were not limited to those on the video, established a reasonable, articulable suspicion for the stop. Accordingly, the state claims that the evidence should not have been suppressed. The state also contends that the trial court erred in discussing the stop in terms of probable cause when all that was needed was a reasonable articulable suspicion.

The state claims that the trial court erred in relying exclusively on the videotape in concluding that no traffic violations had occurred, pointing to Trooper Noel's testimony that other lane violations had occurred before the video camera was activated. The state also refutes the trial court's finding that the broken taillight, as seen on the videotape, was not perceptibly brighter than the other taillight by pointing out that the brightness of the broken taillight in the video may not have accurately reflected what Trooper Noel observed.

■ As a preliminary matter, we note that Trooper Noel stated at the hearing that the traffic violations for which he had stopped Delemos were contained on the videotape. This testimony undercuts the state's argument that the trial court erred in considering only the videotape to determine whether a reasonable basis for the stop had existed. Moreover, although there is some evidence in the record from which the trial court *could have* concluded that Trooper Noel had had a reasonable basis for the traffic stop, the evidence did not compel such a conclusion. Trooper Noel vacillated about what had first drawn his attention to the van and was not candid about the fact that his encounter with the van had not been a random one, *i.e.*, that he had been operating on a tip regarding drug activity. The trial court may also have questioned the credibility of Trooper Noel's testimony that the white light emanating from the broken taillight had been "blinding," when the video did not show a perceptible difference in the brightness of the taillights, and the hole in the red plastic covering appeared to have been small. For these reasons, the trial court could have reasonably concluded that the videotape, and not Trooper Noel's testimony, was the only reliable evidence of the alleged traffic violations.

■ The trial court stated that it had watched the videotape "innumerable times" and that it could not conclude from the videotape that the broken taillight had created an unsafe driving condition, that the vehicle had not been driven "as nearly as practicable, entirely within a single lane or line of traffic" as required by R.C. 4511.33(A), or that it had made an unsafe lane change. Having viewed the video ourselves, we note that the several minutes of videotape revealed basically steady driving, with some drifting within the lane, one or two instances of tires being on the broken white line, and one instance in which the left tires of the van briefly drifted over the broken white line by perhaps one tire width. No other cars were alongside the van during the "drifting" in question. Based on this videotape, we cannot conclude that the trial court erred in finding that Delemos had stayed within the lanes as nearly as practicable.

With respect to the taillight, R.C. 4513.05 and Ohio Adm.Code 4501:2–1–09(D) require only that a vehicle be equipped with at least one working taillight emitting a red light. Delemos's van had one working red taillight and one

working taillight on which the red plastic covering was broken such that it emitted white light. Thus, the broken taillight was not an equipment violation and could have formed a proper basis for the stop only if it created an unsafe condition. Trooper Noel admitted, and the trial court agreed, that the broken taillight had not provided a sufficient basis to stop the van.

Thus, the trial court properly concluded that the traffic stop of Delemos and Allen had been unlawful and that the evidence obtained thereby should be suppressed.

The state also contends that the trial court erred in discussing whether there was probable cause for the stop rather than framing its analysis in terms of reasonable articulable suspicion, which is all that was required pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905–906. Under the facts of this case, however, we find this distinction to be of little significance. The traffic and equipment violations observed by Trooper Noel either constituted a lawful basis for a traffic stop or they did not. No "totality of the circumstances" analysis was required and no inferences needed to be drawn from the events that were witnessed by Trooper Noel. Accordingly, we are confident that the trial court would have determined that this stop was unlawful under a probable-cause or a reasonable-articulable-suspicion analysis and that the distinction was not significant in this case.

The state's assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.