OPINION
The State of Ohio appeals the decision of the Monroe County Court which suppressed evidence obtained by police who stopped Abigail Riesbeck for allegedly making two wide right turns which each brought her vehicle left of center. The state appeals because as a result of the suppression, the charge of operating a motor vehicle while intoxicated can no longer stand against Ms. Riesbeck. For the following reasons, the trial court's decision is affirmed.
 STATEMENT OF THE CASE
Shortly before 3:00 a.m. on May 5, 2001, Officer Roach of the Woodsfield Police Department noticed Ms. Riesbeck's vehicle back out of a parking space, stop for thirty seconds, re-enter the parking space, and shut its lights off. (Tr. 5-6). He thought this sequence of events was "curious." He circled the block. When she backed out of the space and started driving down Main Street, the officer followed her and turned on his dashboard video camera. (Tr. 6).
According to the officer's testimony at the suppression hearing, Ms. Riesbeck made a wide right turn onto West Church Street which caused part of her vehicle to be located left of center. He disclosed that the street had no center or edge lines painted on it and that there is space on the right side of the road for cars to park. (Tr. 25). He did not remember if cars were parked on the right side that night. (Tr. 26). A photograph was admitted into evidence depicting this street.
The officer then testified that Ms. Riesbeck's vehicle moved back to the right side of the road, stopped at the stop sign, and made another wide right turn onto Sycamore Street, again moving left of center. Before he could turn on his lights and siren, Ms. Riesbeck pulled over, parked her car, and began walking up the path to a friend's house. The officer admitted that there was nothing unusual about her manner of walking. (Tr. 9-10).
The officer parked behind her vehicle and told his partner "to holler for her to stop." (Tr. 8). His partner complied, as did Ms. Riesbeck. The officer then ordered Ms. Riesbeck to come back to the cruiser. He testified that as she approached him and he began talking to her, he noticed glassy and bloodshot eyes, slurred speech, and a strong odor of alcohol. (Tr. 9). As elicited on cross-examination, his report did not disclose that Ms. Riesbeck's eyes were glassy and bloodshot. (Tr. 70).
The officer then administered the one-leg stand field sobriety test which he believed she performed very poorly. (Tr. 11). Thus, he transported Ms. Riesbeck to the police station where he administered a finger-to-nose test, a walk-and-turn test, and re-administered the one-leg stand test. (Tr. 13). Ms. Riesbeck also submitted to a breathalyzer test. She was then cited for driving left of center and operating a motor vehicle while intoxicated with a prohibited blood alcohol content.
On May 30, 2001, Ms. Riesbeck filed a suppression motion where she complained about the stop, the administration of the field sobriety test, and the arrest. Strangely, the suppression hearing was held the same day as the motion was filed. The prosecutor stated on the record, "although the motion was just filed today, the officers were here already for the ALS motion and so rather than make them come back, I discussed it with defense counsel, he said we could go forward on the motion to suppress as well." (Tr. 3). Although this excerpt establishes that both officers were present, the state only presented the testimony of Officer Roach. The police car videotape of the night's events was viewed and admitted as an exhibit. The parties were given time to file briefs on the legal issues.
On August 17, 2001, the trial court granted Ms. Riesbeck's suppression motion. The court opined that the only thing unusual observed by the officer was Ms. Riesbeck's action of backing out and then re-entering a parking space. The court found that the police car videotape does not show impaired driving or any violation of law. The court concluded that there was "no probable cause for the traffic stop." The state filed timely notice of appeal and certification pursuant to Crim.R. 12(J).
 ASSIGNMENT OF ERROR NUMBER ONE
The state sets forth three brief assignments of error, the first of which contends:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE'S MOTION TO SUPPRESS ON GROUNDS THAT THE ARRESTING OFFICER LACKED PROBABLE CAUSE TO EFFECT A TRAFFIC STOP."
The state claims that, although the officer intended to stop Ms. Riesbeck, he did not make that stop because Ms. Riesbeck stopped her vehicle and exited it voluntarily. The state then cites to State v.Szewczyk (Sept. 14, 1999), Mahoning App. No. 98CA20, unreported, for the proposition that officers do not need reasonable suspicion to approach and question and individual in or near a parked car. The state concludes that the encounter in the case at hand was consensual.
Contrary to the state's position, this case is nothing like Szewczyk. In Szewczyk, the police approached a parked car that was running with its lights on after observing that the driver was slumped over the steering wheel for at least three minutes. The police were permitted to approach the car without seizing the man to determine if he needed assistance. The seizure did not occur until the police ordered the occupant out of the car. See State v. Vitatoe (Oct. 15, 2001), Clermont App. No. CA2001-03-031, unreported.
It is true that police do not need reasonable suspicion to approach an individual. However, when the totality of the circumstances surrounding the encounter demonstrate that the police conduct communicated to a reasonable person that she was not free to leave, the encounter is a seizure which requires reasonable suspicion for an investigatory detention or probable cause for an arrest. See Florida v. Bostick
(1991), 501 U.S. 429. In this case, the police car followed Ms. Riesbeck's vehicle for two turns. It then pulled behind her parked vehicle. Although she was walking to the house, the officer had his partner "yell" for her to stop. (Tr. 30). He then ordered her to come back to the cruiser. (Tr. 31). The officer told her he was just about to pull her over because her turns were "kinda' wide around the corners." (See video). A reasonable person would not feel free to go. Accordingly, the encounter between the police and Ms. Riesbeck was a seizure/investigatory detention, and this consensual encounter argument is without merit.
The state then argues that even if a detention occurred, the police had both probable cause to write a ticket for the left of center violation and reasonable suspicion that Ms. Riesbeck was driving under the influence. This argument will be addressed infra as the state mentions it under each assignment of error.
 ASSIGNMENT OF ERROR NUMBER TWO
The state's second assignment of error alleges:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN REQUIRING THE STATE TO DEMONSTRATE THE EXISTENCE OF PROBABLE CAUSE TO EFFECT A TRAFFIC STOP, RATHER THAN APPLYING THE LESS DEMANDING REASONABLE SUSPICION STANDARD."
As aforementioned, the trial court's judgment entry stated that suppression was granted because there "was no probable cause for the traffic stop." The state correctly points out that merely reasonable suspicion, rather than probable cause, is required for an investigatory detention. City of Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12. Specifically, a police officer makes a constitutionally valid stop of a vehicle if the officer has an articulable and reasonable suspicion that a traffic violation occurred. Id. This includes minor traffic violations.Id. This objective standard asks whether the facts available to the officer and any rational inferences taken therefrom would lead a person of reasonable caution to believe that a violation is occurring and an investigatory stop is appropriate. State v. Richardson (Dec. 16, 1998), Mahoning App. No. 94CA57, unreported, 2, citing Terry v. Ohio (1968),392 U.S. 1, 21, 22.
Thus, the officer only needed reasonable suspicion to stop Ms. Riesbeck for driving under the influence. Nonetheless, whether the standard is reasonable suspicion or probable cause, the officer stopped her based on his claim that she made two wide right turns that brought part of her vehicle left of the center of the roadway. If the left of center events never happened, then there was no reasonable suspicion to pull her over for driving under the influence or any other violation. The trial court determined that the right turns were not traffic violations nor evidence of impaired driving. The parking space event did not constitute reasonable suspicion of any crime. Hence, the use of probable cause, rather than reasonable suspicion, terminology did not erroneously affect the court's decision.
The state then argues that the officer had reasonable suspicion to stop Ms. Riesbeck to investigate whether she was under the influence. Once again, this argument will be addressed infra.
 ASSIGNMENT OF ERROR NUMBER THREE
The state's third assignment of error asserts:
 "THE TRIAL COURT'S FACTUAL DETERMINATIONS RESPECTING APPELLEE'S DRIVING ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The state argues that the court made two factual errors. First, the state complains that the court should not have determined that insufficient grounds to stop existed merely because some conduct did not appear in the video. The state contends that the police car video camera was not yet on when Ms. Riesbeck made her first wide turn. During the second turn, the state notes that the video camera faces straight ahead, and thus, Ms. Riesbeck turned out of the camera's line of vision. The state concludes that the officer's testimony on the wide turns was uncontradicted.
Reviewing courts stand by the rule that the trial court presiding over a suppression hearing is in the best position to resolve questions of fact and evaluate witness credibility and weight of the evidence. Statev. Smith (1997), 80 Ohio St.3d 89, 105; State v. Mills (1992),62 Ohio St.3d 357, 366. Hence, the reviewing court shall accept the trial court's findings of fact if it finds that they are supported by competent, credible evidence. See, e.g., State v. Fanning (1982),1 Ohio St.3d 19.
In this case, the court could have considered the fact that the officer was not directly behind Ms. Riesbeck's vehicle at the turns and thus he could not observe any left of center drift during a turn. The court could have considered the fact that the streets contained no painted center or edge lines and the right side of this road had space for parked cars. We have previously held that de minimis line violations do not give reasonable suspicion to stop for driving under the influence. Ms. Riesbeck was not speeding, used turned signals, made complete stops, and engaged in no erratic driving. The officer did not pull her over after her first alleged wide turn and did not pull her over immediately after her second alleged wide turn.[1] The court may have also considered the fact that the other officer was not called to testify by the state and confirm his partner's observations. In short, the court apparently did not find the officer's testimony to be credible. This is the prerogative of the trial court.
The state believes that there is a difference here because we have a video upon which the state believes the trial court placed too much weight. Yet, regardless of the court's language, it is apparent that the court did not believe the officer's testimony. As previously noted, the state could have bolstered this officer's testimony with that of his partner but chose not to do so.
We should point out that the officer's testimony establishes that he turned the camera on before the first turn, while the state argues that he turned it on after the first turn. In viewing the video, however, it appears that he turned it on right in the middle of the turn. Hence, it is unascertainable whether this constitutes a reasonable basis for the stop. See State v. Delemos (2000), 140 Ohio App.3d 512, 515 (stating that while there is some evidence on the record and video from which the trial court could have concluded the officer had a reasonable basis for the stop, the evidence did not compel such a conclusion).
On the second turn, a wide turn is not apparent, especially considering that she pulled over almost immediately and the police had yet to make the turn in order to view whether she was left of center. As such, the trial court did not err in finding that this second turn did not provide reasonable suspicion to stop for intoxicated driving or probable cause to ticket for left of center.
The state also takes issue with the following finding in the trial court's entry, "Roach testified on cross-examination that [Ms. Riesbeck] * * * was not violating any traffic laws." The state points out that the officer was referring to the moment when he began to follow Ms. Riesbeck. The state also notes that the officer testified that Ms. Riesbeck made two wide right turns that went left of center, constituting the traffic violations. It does not appear that the court misinterpreted the officer's testimony. Rather, the entry is in sequential order as per the order of testimony at the hearing. The court noted that the officer testified that Ms. Riesbeck made two wide right turns. However, the court found that the officer's testimony was not credible. Thus, this statement in the entry is not reversible error. This assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., and Waite, J., concurs.
[1] The court may have believed that the officer followed her, waiting for her to engage in erratic driving behavior, but when she stopped at a house before he had a chance to observe something of substance, he pulled behind her and ordered her to approach his car so he could determine if she appeared intoxicated.