OPINION
{¶ 1} Appellant, Michael A. Wojtaszek, appeals from the December 20, 2001 judgment entry of the Lake County Court of Common Pleas, in which appellant was convicted of one count of possession of cocaine and sentenced.
 {¶ 2} On July 11, 2001, appellant was indicted by the Lake County Grand Jury on two counts of possession of cocaine, felonies of the fifth degree, in violation of R.C. 2925.11. On July 27, 2001, appellant filed a waiver of the right to be present at the arraignment, and the trial court entered a not guilty plea on appellant's behalf. On July 31, 2001, appellant entered a not guilty plea. On September 26, 2001, appellant filed a motion for leave to file a "Motion to Suppress/Dismiss." On October 5, 2001, the trial court granted appellant's leave to file his motion. A suppression hearing was held on November 13, 2001. By judgment entry filed on November 14, 2001, the trial court denied appellant's "Motion to Suppress/Dismiss." On November 19, 2001, appellant entered a written plea of no contest to one count of possession of cocaine, with the remaining count nolled. On December 20, 2001, appellant was sentenced.
 {¶ 3} The evidence submitted at the suppression hearing indicated that while on duty on April 7, 2001, at approximately 2:45 a.m., Officer Timothy Doyle ("Officer Doyle") of the Madison Township Police Department was traveling westbound on Chapel Road when he observed a vehicle traveling eastbound going left of center. Officer Doyle turned his cruiser around and traveled behind the vehicle, which was traveling slower than the posted speed limit and went left of center approximately three more times. Officer Doyle then initiated a traffic stop. The vehicle, driven by Jay Laufenburger ("Laufenburger"), came to a stop in the middle of the roadway, just before the intersection of Chapel Road and Hubbard Road.
 {¶ 4} Upon approaching the vehicle, Officer Doyle observed that there were a total of four occupants, all males who appeared to be in their twenties and thirties. Officer Doyle informed Laufenburger of the reason for the stop and observed appellant, who was the front seat passenger, tap Laufenburger and hand him a cell phone while stating twice "[h]ere talk." Officer Doyle then detected an odor of beer coming from inside the vehicle and observed an open case of beer, which was located on the front seat between Laufenburger and appellant, with some of the cans of beer missing.
 {¶ 5} Officer Doyle attempted to communicate with Laufenburger, who ignored Officer Doyle's presence and continued talking with appellant. Officer Doyle asked all four occupants for identification and everyone complied except Laufenburger. At this time, Officer Doyle ordered Laufenburger to step out of the vehicle. Laufenburger appeared to be highly intoxicated because he was lethargic and hanging on the driver's side door. The other three occupants of the vehicle, including appellant, were loudly expressing their displeasure with the traffic stop and also appeared to be highly intoxicated. Officer Doyle called for back up assistance at that time.
 {¶ 6} Officer William E. Barson ("Officer Barson"), also of the Madison Township Police Department, arrived on the scene while Officer Doyle was explaining to Laufenburger his traffic violations. Officer Doyle detected alcohol on Laufenburger's breath. Officer Doyle told Laufenburger that he was suspected to be under the influence of alcohol and asked him if he had any medical conditions that would prevent him from taking a field sobriety test. Laufenburger stated that he did not. Officer Doyle asked Laufenburger to submit to a field sobriety test, but Laufenburger declined. Officer Doyle told Laufenburger that due to the totality of the circumstances, he was going to be placed under arrest for operating a vehicle while under the influence of alcohol. Laufenburger responded by asking Officer Doyle to give him a break. Officer Doyle told Laufenburger again that he had the opportunity to submit to a field sobriety test. Laufenburger advised Officer Doyle that he would have failed the test anyway. Officer Doyle then placed Laufenburger in the back of the police cruiser.
 {¶ 7} After running the license plate number on the vehicle, Officer Doyle discovered that the car was not registered to Laufenburger or any of the other three occupants. In such a situation, the Madison Township Police Department has a policy to inventory and tow the vehicle. In accordance with the policy, Officer Doyle requested a tow of the vehicle. Officer Doyle approached the passenger side of the vehicle and asked appellant to step out of the vehicle, and appellant complied. Upon appellant's exit of the vehicle, Officer Doyle was concerned about his safety, due to the fact that it was 2:45 a.m., and there were four men who appeared to be highly intoxicated and whose behavior seemed to be suspicious. Therefore, Officer Doyle conducted a protective pat down search of appellant's person. Officer Doyle felt a hard object with a round cylinder, which was approximately six inches in length in appellant's rear pocket. Officer Doyle asked appellant what the object was and appellant responded by pulling out what appeared to both Officer Doyle and Officer Barson to be a crack pipe. Without being questioned, appellant told Officer Doyle and Officer Barson that he did not know how the pipe got in his pocket, and that the pants he was wearing were not his. Appellant was arrested at that time for possession of drug paraphernalia and placed in the back of a different police cruiser from Laufenburger.
 {¶ 8} Officer Doyle next ordered the remaining two back seat occupants out of the vehicle and subjected them to protective pat down searches. Nothing was found on either of them. Officer Doyle issued minor misdemeanor citations to the back seat occupants and released them after determining that they were not intoxicated enough to pose a hazard to themselves or others.
 {¶ 9} Officer Doyle and Officer Barson conducted an inventory search of the vehicle. Both officers observed that the back seat floorboards were soaked with beer, two open beer cans were partially under the front seat, and one other beer can was under the front seat where appellant was sitting. Officer Barson found cocaine on the floor of the vehicle between the front passenger's seat and the door. After the inventory search of the vehicle was completed, it was towed.
 {¶ 10} Officer Barson told appellant what was found and read him his Miranda rights. Appellant again insisted that it was not his crack pipe, but rather was given to him by Laufenburger as the vehicle was being stopped. Appellant also stated that he had no knowledge of the crack cocaine found in the vehicle. Officer Barson then read the Miranda warnings to Laufenburger. Officer Barson asked Laufenburger if he had given the crack pipe to appellant. Laufenburger denied giving the crack pipe to appellant and denied having any knowledge of the crack cocaine in the car. Appellant and Laufenburger were taken to the police station.
 {¶ 11} The trial court sentenced appellant on December 20, 2001, to sixty days in jail with credit for three days for time served. Additionally, appellant's driver's license was suspended for six months. It is from that judgment that appellant filed a timely notice of appeal on January 18, 2002, and makes the following assignments of error:
 {¶ 12} "[1.] The trial court erred in denying [a]ppellant's [m]otion to [s]uppress [e]vidence seized in an improper [Terry pat down search].
 {¶ 13} "[2.] The trial court erred in denying [a]ppellant's [m]otion to [s]uppress any oral statements."
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred in failing to suppress evidence during an improperTerry pat down search, as well as after the initial Terry pat down search, and in ruling that at least a portion of the evidence collected would have been inevitably discovered from a subsequent search of the car at impound.
 {¶ 15} The Fourth Amendment of the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." When a police officer stops an automobile and detains its occupants, a "seizure" is committed within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution. Delaware v. Prouse (1979), 440 U.S. 648, paragraph two of the syllabus.
 {¶ 16} If a police officer observes any traffic law violation, sufficient grounds exist for the officer to stop the vehicle. State v.Brownlie (Mar. 31, 2000), 11th Dist. Nos. 99-P-0005 and 99-P-0006, 2000 Ohio App. LEXIS 1450, at 6, citing Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. Where a police officer witnesses a minor traffic violation, the officer is justified in warranting a limited stop for the purpose of issuing a citation. Brownlie, supra, citing State v. Jennings
(Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at 8. The police officer may then proceed to investigate the detainee for DUI if the officer has a reasonable suspicion that the detainee may be intoxicated. Id.
 {¶ 17} In the case at bar, Officer Doyle's observation of the vehicle at issue traveling numerous times left of center constituted sufficient grounds in stopping the vehicle. "***[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating theFourth Amendment's proscription of unreasonable searches and seizures."Pennsylvania v. Mimms (1977), 434 U.S. 106, 111. The Mimms rule applies to both passengers and drivers. Maryland v. Wilson (1997), 519 U.S. 408,414. Appellant concedes that the initial traffic stop of Laufenburger's vehicle as well as Officer Doyle's action in ordering appellant out of the vehicle were proper.
 {¶ 18} Under the Fourth and Fourteenth Amendments, a search conducted without a warrant issued upon probable cause is "`per se
unreasonable *** subject only to a few specifically established and well-delineated exceptions.'" (Emphasis sic.) Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 219, quoting Katz v. United States (1967),389 U.S. 347, 357. One such exception to the warrant requirement is the protective pat down search. A police officer is justified in conducting a limited search for weapons, if the officer has made a valid investigative detention of a suspect and has a reasonable belief that the suspect is armed and presently dangerous to the officer or to others. Terry v. Ohio
(1968), 392 U.S. 1, 24. "***[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27.
 {¶ 19} First, in the instant matter, appellant contends that there was no evidence and that Officer Doyle had no basis for believing that appellant was armed or otherwise dangerous. However, it was proper for Officer Doyle to conduct a protective pat down search of appellant's person. Due to the fact that the stop occurred at approximately 2:45 a.m., appellant appeared intoxicated and acted in a loud and suspicious manner, the back seat occupants were acting in a loud and boisterous manner, and there was an open case of beer on the front seat between Laufenburger and appellant, a reasonably prudent police officer would be warranted in the belief that his safety was in danger. See Terry, supra. According to Officer Doyle's testimony, it was when he first asked Laufenburger to exit the vehicle, as well as for the reasons previously stated, that he became concerned for his safety and called Officer Barson for back up assistance. Therefore, under the totality of the circumstances, Officer Doyle was justified in conducting a protective pat down search of appellant.
 {¶ 20} When Officer Barson first arrived on the scene, he was also concerned with his own safety as well as with Officer Doyle's safety due to the fact that this was not "a typical traffic-type stop." While Officer Doyle was dealing with Laufenburger, Officer Barson positioned himself in such a way that he could assist Officer Doyle if need be, while watching the occupants of the vehicle, who were acting in a loud and boisterous manner. Based on the totality of the circumstances, both Officer Doyle and Officer Barson acted reasonably in believing that their safety was an issue. Therefore, the pat down search of appellant was proper.
 {¶ 21} Second, appellant contends that Officer Doyle exceeded the scope of the initial Terry pat down search. According to Terry, supra at 29, the sole justification of a search "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, orother hidden instruments, for the assault of the police officer." (Emphasis added.) Although Officer Doyle knew that the object in appellant's back pocket was not a gun or a knife, Officer Doyle felt a "hidden instrument," namely a hard object with a round cylinder, approximately six inches in length, in appellant's back pocket. Upon feeling that object, Officer Doyle, like any reasonable police officer, immediately suspected that it could have been a weapon, specifically either a syringe or a dagger. See Terry at 27. "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Id. at 23.
 {¶ 22} In this case, the pat down search of appellant did not go beyond the initial protective pat down search. See State v. Kelly (Dec. 7, 2001), 11th Dist. No. 2000-P-0113, 2001 Ohio App. LEXIS 5444. Rather, while conducting the initial protective pat down search, Officer Doyle immediately suspected that the object, the crack pipe in appellant's back pocket, may have been a weapon. The crack pipe was found during that initial search, when appellant voluntarily took it out. Thus, Officer Doyle's search of appellant was based upon Officer Doyle's concern for his own safety and did not exceed the scope of the Terry pat down search.
 {¶ 23} Third, appellant contends that it was error to rule that the crack cocaine found in the vehicle would have been inevitably discovered from a subsequent search of the car at impound. "A car may be impounded if it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance." State v. Taylor (1996), 114 Ohio App.3d 416, 422. The Madison Township Police Department has a policy to tow a vehicle when the driver is arrested and when the vehicle does not belong to the driver or to any other occupants of the vehicle. In this case, the driver of the vehicle, Laufenburger, was arrested, and the vehicle did not belong to him or any other occupants. Also, because the vehicle at issue was stopped in the middle of the roadway just before a major intersection and because it was apparent that the driver as well as the passengers had been drinking, impoundment of the vehicle was lawful.
 {¶ 24} In the instant matter, the crack cocaine was discovered pursuant to a valid inventory search at the scene due to the fact that the driver of the vehicle, Laufenburger, was to be arrested and the vehicle was to be towed. Based on the totality of the circumstances, specifically with respect to the discovery of the crack pipe, the officers had independent probable cause to search the vehicle. State v. Carter (Apr. 12, 2002), 2d Dist. No. 19105, 2002 Ohio App. LEXIS 1657, at 6. In any event, the crack cocaine would have been inevitably discovered once the vehicle was impounded if it had not been found at the scene. The main reason that the trial court did not suppress the crack cocaine was that it was discovered pursuant to a valid inventory search. The trial court's comment on the inevitable discovery was a parenthetical statement. Thus, because the impoundment of the vehicle was lawful, the routine inventory search was valid. See South Dakota v. Opperman (1976), 428 U.S. 364;State v. Robinson (1979), 58 Ohio St.2d 478. Therefore, for the foregoing reasons, appellant's first assignment of error is without merit.
 {¶ 25} In his second assignment of error, appellant argues that the trial court erred in denying his motion to suppress any oral statements.
 {¶ 26} If a suspect is in custody, police officers are required to advise the suspect of his Miranda rights prior to questioning him.Miranda v. Arizona (1966), 384 U.S. 436, 478-479. In order to determine whether one is in custody, courts must focus on how a reasonable person in the detainee's position would have felt if he or she were in the same position. State v. Gaston (May 13, 1996), 11th Dist. No. 95-L-126, 1996 Ohio App. LEXIS 1808, 13, citing Berkemer v. McCarty (1984), 468 U.S. 420,426.
 {¶ 27} In the case sub judice, however, Officer Doyle's question to appellant about the object he felt in his pocket was an on-scene investigative questioning, which does not trigger the requirement of Miranda warnings. Gaston, supra, at 12. "Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." Miranda, supra, at 478. As previously mentioned, after appellant pulled the crack pipe out of his pocket, he voluntarily told Officer Doyle and Officer Barson that he had no knowledge of how the pipe got in his pocket, and that the pants he was wearing were not his. Thus, appellant's statements, which he voluntarily blurted out, were not made as the result of any interrogation. Therefore, the requirements of Miranda were not triggered at the time appellant made the foregoing statements. Therefore, appellant's second assignment of error is without merit.
 {¶ 28} For the foregoing reasons, appellant's assignments of error are not well taken. The judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL and ROBERT A. NADER, JJ., concur.
ROBERT A. NADER, J., retired, of the Eleventh Appellant District, sitting by assignment.