{¶ 36} I respectfully dissent from the majority's decision in the first and third assignments of error, but agree with the majority's decision concerning the second assignment of error.
 {¶ 37} Regarding the first assignment of error, I would find that the trial court erred in not striking the motion to suppress when the state orally moved to strike Hill's motion because it was not pled with particularity in violation of Crim.R. 47.
 {¶ 38} First, the majority chastises the state for not putting the motion to strike in writing and for waiting until the day of trial to move to strike the motion to suppress. Hill and Zarnesky complain that pursuant to Loc.R. 11 of the Court of Common Pleas of Cuyahoga County, General Division, the state is required to file a written motion opposing their motion to suppress and that, otherwise, the state waives its right to request the court to strike the motion from the record.
 {¶ 39} There is no case, however, in our district applying Loc.R. 11 to criminal cases. Further, Loc.R. 23 is silent as to the specifics for filing responsive motions in criminal cases. Finally, there is no requirement in the Criminal Rules of Procedure that mandates that the state or defendant put a motion to strike in writing in order to request such action by the court. In fact, nowhere do the rules indicate that the state must respond in writing to a motion to suppress. Crim.R. 47 leaves it within the discretion of the trial court to decide, and in the instant case the trial court did not require, that the state's motion to strike be reduced to writing. I believe the state was well within its right to move to strike the motion to suppress on the day of trial, and no case law has been cited by the majority to suggest otherwise.
 {¶ 40} Next, the majority asserts that the state's delay deprived the defendant of any opportunity to correct the alleged omissions. Still, it is the defendant's burden, initially, to set forth the legal and factual basis with sufficient particularly to assure a hearing. State v.Schindler (1994), 70 Ohio St.3d 54, syllabus.
 {¶ 41} The majority cites State v. Sargent (Aug. 17, 1994), Clark App. No. 3042, for the proposition that a defendant may file a motion to suppress out of rule when "it was filed promptly after the State had provided its discovery disclosure," reasoning that "[c]learly defendant [referring to Hill and Zarnesky] could not have indicated what of the state's evidence should be suppressed when the state had failed to inform him until one hour before trial just what the evidence was."
 {¶ 42} In State v. Sargent, supra, Sargent was charged with driving under the influence. The state's discovery response included copies of the notification of refusal form and the operator's permit, which the court stated "may demonstrate the grounds alleged in support of paragraphs (2) and (8) of the motion to suppress." The court reasoned that Sargent could not responsibly have presented his motion to suppress alleging those grounds any earlier. In Sargent, unlike the case at bar, the motion was stated with particularity; it was simply filed late.
 {¶ 43} Here, the motion was grossly inadequate. Crim.R. 47 states, in pertinent part: "An application to the court for an order shall be by motion. * * * It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by affidavit." (Emphasis added.) Before a hearing on a motion to suppress evidence is required, "the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided."Shindler, 70 Ohio St.3d at syllabus, citing Crim.R. 47 and Xenia v.Wallace (1988), 37 Ohio St.3d 216.
 {¶ 44} In State v. Scott (Dec. 14, 2001), Cuyahoga App. No. 77461, the defendant's motion to suppress evidence factually alleged only that there was no probable cause to search his person or vehicle and to confiscate his property. This court stated: "This bare, partial recitation of hornbook law on warrantless searches lacks a sufficient factual basis to put the prosecutor on notice of the issues to be decided as they related to Scott." Id. Consequently, this court affirmed the trial court's decision denying the defendant's request for a hearing on the matter.
 {¶ 45} In the instant case, Hill's motion stated in its entirety: "Now comes the Defendant, Michael Patrick Hill, by and through his undersigned counsel of record, and hereby moves this Honorable Court to Suppress any and all evidence as fruit of the poisonous tree from the illegal stop and detention of Defendant Michael Patrick Hill. Defendant requests that hearing on this motion be set forthwith accordingly."
 {¶ 46} Hill's boilerplate motion to suppress does not include a memorandum of law, nor does it contain any facts sufficient to place the prosecutor and court on notice of the issues to be decided. Crim.R. 47 clearly states that a motion shall state with particularity the grounds upon which it should be granted. Furthermore, Crim.R. 47 states that the motion shall be supported by a memorandum containing citations of authority. Neither of these fundamentals were included in Hill's motion. See, also, State v. Boone (1995), 108 Ohio App.3d 233 (evidentiary hearing properly denied when defendant's boilerplate motion did not contain a single factual allegation to support his claims). Therefore, the trial court erred in not striking the motion to suppress.
 {¶ 47} The majority states that the absence of specific citations of authority is "troubling," but goes on to reason that the state cannot claim to be unfamiliar with the law regarding the "fruit of the poisonous tree" doctrine. Admittedly, it is unlikely one would be unfamiliar with this doctrine; however, this doctrine was not at issue in the case. That doctrine is the remedy, not the authority to suppress the evidence.
 {¶ 48} In this case, the problem is not what Hill and Zarnesky want suppressed. Obviously they want the drugs and money suppressed as "fruit of the poisonous tree"; however, why they are entitled to have it suppressed is the question. What legal and factual basis supports their allegation that the evidence was seized illegally? A broad allegation that the stop and detention were illegal is insufficient to put the prosecutor on notice.
 {¶ 49} In addition, the majority relies on State v. Mook, Trumbull App. Nos. 2001-T-0057 2001-T-0058, 2002-Ohio-6693, where the Eleventh District was satisfied with a bare bones motion; however, Mook is not binding on this court. But Crim.R. 47 and Xenia v. Wallace (1988),37 Ohio St.3d 216, are. Both say that the motion shall state with particularity the grounds upon which the motion should be granted andshall contain citations of authority. See, also, State v. Shindler,
supra.
 {¶ 50} Although the majority opinion notes that the state cited only one case in support of its position, that case was binding authority from the Supreme Court of Ohio. The case, as well as its holding, is significant because the defense failed to cite any authority for its position.
 {¶ 51} The majority states, "In Xenia, however, the court found that the defendant had presented sufficient facts to apprise the state of its objection." The Supreme Court of Ohio actually said: "In the case at bar, the defendant moved to suppress evidence relating to any chemical testing on the grounds that the test was `illegally obtained' and was not performed in accordance with proper procedure. Without more, this motion was insufficient to raise the issue of whether Officer Savage had probable cause to administer a breathalyzer test. * * * Further, the defendant did not file a motion in support of his motion as required by Crim.R. 47. * * * However, the prosecutor did not object to the defendant's motion and the court allowed the parties to proceed." (Emphasis added.) The court reasoned that the defense placed the state on sufficient notice only after the questioning of the police officer and providing case law. The court never stated that the motion to suppress was sufficient.
 {¶ 52} As to the third assignment of error, the state argues that the officer had a reasonable suspicion to stop the vehicle for a curfew violation. Hill and Zarnesky argue that an officer cannot stop a vehicle to investigate a possible curfew violation. The majority holds that the officer did not have sufficient reasonable suspicion that the curfew ordinance was being violated because he could not decipher who the third occupant was.
 {¶ 53} "Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid." Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12. Furthermore, when reviewing an officer's actions, the reviewing court must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement. State v. Andrews (1991), 57 Ohio St.3d 86.
 {¶ 54} In Richmond Hts. v. Marando (May 28, 1992), Cuyahoga App. No. 60471, the defendant, aged 23, was pulled over by police because he was suspected of violating curfew. The officer testified that he observed the car for ten seconds and noted that the occupants were youthful looking because of their features, hair, coloring, and clothing. Id. This court found that under these circumstances, the officer had a reasonable and articulable suspicion that the defendant was violating curfew. Id.
 {¶ 55} Following the holding in Marando, the trial court in City ofAkron v. Fair (1994), 68 Ohio Misc.2d 40, denied the defendant's motion to suppress, finding that the investigative stop was reasonable. The defendant was observed, after curfew, in a vehicle in an area where police had received complaints about curfew violations. Id. The defendant, who was not a minor, was a passenger in the car. Id. The officer testified that he observed three "young looking persons" in the automobile. Id. The court stated, "A `young looking' appearance is probably the only indicator of being too young to be out after curfew and, thus, the only grounds for an adult curfew stop." Id. at 43-44.
 {¶ 56} Finally, in State v. Culver (2000), 106 Ohio Misc.2d 27, the trial court denied defendant's motion to suppress based on the narrow issue of whether the officer made a valid traffic stop. In this case, the officer testified that because of prior dealings with the police one of the five individuals in the car was known by him to be a juvenile. The officer followed the car and pulled it over after defendant, driver, failed to signal before a turn. The court determined that the officer had two reasons to pull the car over, both of which, independently, gave rise to a reasonable suspicion to stop the vehicle. The court stated the officer "had an articulable and reasonable suspicion that at least one of the occupants of the motor vehicle was violating curfew." Id. at 337.
 {¶ 57} The trial court found that a curfew violation occurs only if one of the exceptions do not apply. The trial court stated, "How the officer could come to the conclusion that this minor was not accompanied by a parent or a guardian, or a person in charge of a minor, who was a responsible person or a person who was over the age of 21, I don't think it's possible to draw that conclusion." The court rhetorically asked what if the juvenile's parent was in the backseat.
 {¶ 58} In the instant case, the majority reasons that if the backseat passenger qualified as one of the three exceptions to the curfew ordinance, the juvenile's presence on the street at that hour would not have been illegal.
 {¶ 59} Keeping in mind this officer's experience and training, we look at the circumstances surrounding the stop. Officer Chernisky recognized the juvenile in the car, who was out well past curfew. He recognized Zarnesky and knew he was under 21 years of age and was not the parent or guardian of the minor. Officer Chernisky had prior dealings with both the juvenile and Zarnesky. The officer knew where this minor lived and correctly assumed that was where Zarnesky was headed. The third occupant was in the backseat. As it turned out, the backseat passenger, Hill, was also known to the officer from past encounters, and he knew Hill was under the age of 21.
 {¶ 60} Viewing the officer's actions in light of his experience and training, I find the officer had a reasonable articulable suspicion that at least two of the occupants, possibly three, were violating the law. To suggest that an officer must be able to discern the age of each occupant to make sure no one fits the exception before having the right to investigate creates an unreasonable and unenforceable standard. It was reasonable for an officer under these facts to conduct an investigative stop. The majority's view that the third occupant could have been the juvenile's parent or guardian is not reasonable under these facts.
 {¶ 61} This is not a situation where the police officer saw a juvenile in a car and, without anything more, pulled the car over. This officer saw and knew two of the three occupants and believed they were violating the law. Therefore, the investigative stop was reasonable and valid.